THE STATE ex rel. McKINLEY PUBLISHING COMPANY v. GEORGE E. HACKMANN, State Auditor.

In Banc, April 9, 1926.

1. **PLEADING: Motion for Judgment.** A motion for judgment on the pleadings filed by relator in' mandamus admits, directly or impliedly, all facts well pleaded in the return, and leaves for consideration only issues of law.

2. **EXECUTIVE DEPARTMENTS: Definition: Public Printing.** Under the Constitution of Missouri and the accepted definition of "executive departments" the term includes all persons upon whom are imposed duties in the administration of public affairs as contradistinguished from legislative and judicial functions, and executive acts include all acts which such persons are required to perform by legislative authority and are bound to obey. The Act of 1921 (Chap. 89, Laws 1921, p. 568) relating to the printing for the executive departments of the State, and declaring in its Section 9714 that "executive departments shall in this and other sections of this chapter be construed to mean both the heads of said departments and the subordinate branches thereof, the boards, commissions, bureaus and officers appointed by the heads of said departments, except the boards of educational and eleemosynary institutions of the State," was within the purview of the accepted definition, and was a legislative declaration, in unmistakable terms, that by "executive departments," so far as concerns the public printing, was meant all the executive branches of the State Government except educational and eleemosynary institutions.

3. ———: **State Highway Commission: Printing.** Under Section 9714 of the Act of 1921, Laws 1921, page 568, relating to the printing for the "executive departments" and' declaring that "executive depart-

314 Mo.—3.

ments shall . . . be construed to mean both the heads of said departments and the subordinate branches thereof, the boards, commissions, bureaus and officers appointed by the heads of said departments," etc., the State Highway Commission, composed of four commissioners appointed by the Governor, and whose duties are to construct, improve and maintain highways, is a branch of the Executive Department of the State, and the act creating it having declared that its supplies shall be paid for as "other expenses authorized by this act," its printing must be done under the authority and regulations of the State Printing Commission, and paid for out of money appropriated by the Legislature for the purpose.

4. PRINTING: State Highway Commission: Appropriation Bill. The fact that the separate appropriation acts for the support of the State Highway Commission mention printing as an item to be paid for out of the moneys so appropriated is no reason why the commission should not conform to the statute authorizing and regulating printing for the executive departments. An appropriation does no more than to set apart the amount and designate the purpose for which the designated sum may be expended, and is immaterial in determining the manner in which it shall be expended, and cannot impair a general statute prescribing that it shall be expended under the authority and regulation of another commission.

5. ———: ———: Supported by Fees. The fact that the State Highway Commission is supported by fees collected from motor vehicles is immaterial in determining whether its printing must be done under the authority of the State Printing Commission. It is the character and not the source of the fund it seeks to expend for printing and stationery that defines its duty and fixes the limit of its power to expend the fund.

6. ———: ———: ———: State Revenue. The money out of which the State Highway Commission is maintained is public or state revenue. Whether it be called motor-vehicle-registration fees, or license fees, or a tax, or by any other name, it is a tax levied by the State upon the right of motor vehicles to use the public highways, is collected by the State, and paid directly into the State Treasury, and all of it that can be used for maintaining the commission is subject to legislative appropriation, just as is other state revenue.

7. ———: ———: Appropriation Bill: Specific Direction: Legislative Construction. The separate Appropriations Act of 1925, making appropriations of money for the support of the State Highway Commission alone, and declaring that "all stationery, paper and printing provided for or to be paid for by money appropriated by this act shall be done under the authority and supervision of the State

. . .

State ex rel. Publishing Co. v. Hackmann.

Printing Commission, as provided for by Chapter 89 of Revised Statutes 1919," while adding nothing to the mandatory requirements of Chapter 89, indicates unquestionably that the Legislature had in mind the printing for the Highway Department when it added this specific requirement, and was an emphatic legislative construction that said chapter, relating to printing for the executive departments, applied to the Highway Department. [Distinguishing State ex rel. v. Wilder, 199 Mo. 470.]

8. ———: ———: Plain Words: Construction: Revenue. The words of Section 9717 of the Printing Act, declaring that, after printing has been done in conformity with the act, "the State Auditor shall draw a warrant upon the Treasury for the amount thereof, payable out of any moneys appropriated for that purpose," are as clear and plain as language can be written, and therefore cannot be tortured to mean "any moneys in the general revenue fund appropriated for that purpose." Plain and clear language, free from all ambiguity, cannot be enlarged or restricted, or its meaning changed, by judicial construction.

9. ———: ———: Appropriation. Moneys to pay the cost and expense of collecting motor-vehicle-registration fees or license fees and the cost of maintaining the State Highway Commission were not appropriated by the Constitution (Sec. 44a, Art. 4), but moneys to pay such costs and expenses can be paid out only in pursuance to legislative appropriation acts. The Commission cannot determine for itself, without legislative sanction, how much of such fees it will expend for its own maintenance, such as supplying itself with printing and stationery.

10. ———: ———: Payment. The State Auditor is expressly prohibited by plain statute from paying a bill created by the State Highway Commission for printing done by a company which does not hold a contract with the State for doing the printing for the executive departments; and with whatever company a contract for doing the State printing may be made, the State Auditor cannot pay its bill until the Legislature first appropriates money with which to pay it.

11. ———: ———: ———: Out of Particular Fund. Nothing in Chapter 89, Revised Statutes 1919, as amended in 1921, regulating public printing, attempts to prescribe the particular fund out of which claims for printing and stationery may be paid, but it simply prescribes that such claims shall be paid out of any moneys in the Treasury appropriated for that purpose; and in that respect the chapter is constitutional, and it therefore contemplates that the Legislature will biennially make appropriations to pay such claims, and is not restricted to making appropriations out of the general

revenue fund for the payment of claims for public printing and stationery, but may require the cost of printing for the State Highway Commission to be paid out of the money appropriated for its maintenance.

Corpus Juris-Cyc. References: Evidence, 23 C. J., Section 1941, p. 125, n. 36. Highways, 29 C. J., Section 298, p. 573, n. 38. Mandamus, 38 C. J., Section 406, p. 768, n. 30; Section 407, p. 768, n. 43; Section 633, p. 903, n. 36. States, 36 Cyc., p. 887, n. 60 New; p. 890, n. 2; p. 891, n. 6; p. 892, n. 13; p. 895, n. 43. Statutes, 36 Cyc., p. 1105, n. 24; p. 1107, n. 31, 32, 33; p. 1115, n. 97, 98, 99, 1, 2.

## Mandamus.

ALTERNATIVE WRIT DISCHARGED.

*L. N. Wylder, Lue C. Lozier* and *John T. Barker* for relator.

(1) The State Highway Department may purchase its printing and supplies wherever it sees fit. It is not under the provisions of the "state printing contract." Sec. 44A, Art. IV, Constitution of Missouri; State ex rel. v. Wilder, 199 Mo. 488; Laws 1923, sec. 57, p. 28; sec. 95, p. 40; sec. 102, p. 42. (2) The relator was not required to submit his account to the State Printing Commission, because the Highway Department is not under the "state printing contract." State ex rel. v. Wilder, 199 Mo. 484; Sec. 57, Laws 1923, p. 28.

*Robert W. Otto,* Attorney-General, and *George W. Crowder,* Assistant Attorney-General, for respondent; *Wilfley, Williams, McIntyre & Nelson* of counsel.

(1) Printing and stationery used by the State Highway Commission must be purchased in compliance with and under the provisions of Chap. 89, R. S. 1919, and amendments thereto. Secs. 9697, 9698, 9699, as amended by Laws 1921, pp. 568, 9714 and 9721, R. S. 1919. (2) The case of State ex rel. v. Wilder, 199 Mo. 470, is not controlling in the case at bar because the statutory law which was there construed and which formed the basis for said decision was subsequently

amended by the Legislature. Laws 1919, p. 617; Sec. 9714, R. S. 1919. (Compare above section with Sec. 9028, R. S. 1899, which was the statute in effect when the Wilder case was decided). (3) Sec. 10893, R. S. 1919, upon which relator so strongly relies, has been repealed. Laws 1921 (1st Ex. Sess.) p. 132. (4) The State Auditor is expressly prohibited from approving or paying accounts for such printing unless said printing is ordered and the work thereof rendered in accordance with the provisions of said Chapter 89. Sec. 9714, R. S. 1919. (5) Section 44a of Article IV of the Constitution does not provide that the cost of maintaining the State Highway Commission shall be paid out of motor vehicle tax without legislative sanction by way of an appropriation act. It is only the balance left after the cost of maintenance is deducted that is to be spent in paying principal and interest on bonds without legislative action. Laws 1921 (1st Ex. Sess.) p. 196. (6) No money shall be paid out of the Treasury of the State except in pursuance of an appropriation by law. Sec. 19, Art. 10, Mo. Constitution. (7) There has been no appropriation by the General Assembly for the payment of relator's bill for printing because the Appropriation Act of 1923 expressly provides that all printing for which appropriation is made shall be printing done under the direction of and by the authority of the State Printing Commission. Laws 1923, p. 75, sec. 261. (8) Neither could there be a valid law appropriating money of the State to pay relator's bill, because the Constitution expressly prohibits the General Assembly from authorizing the payment of any claim against the State under any agreement or contract made without express authority of law. Sec. 48, Art. IV, Mo. Constitution. (9) Any agreement or contract between the State Highway Commission and relator for the supplying of the printing and stationery described in relator's petition was made without express authority of law, and is therefore under the express language of the Constitution, null and void. Sec. 48, Art. IV, Mo. Constitution.

WALKER, J.—This is an original proceeding in mandamus to compel the respondent, the State Auditor, to issue a warrant upon the State Treasury to pay for certain printing and stationery alleged by the relator to have been furnished to the State Highway Commission.

Respondent filed a return to the alternative writ, and the relator moved for a judgment on the pleadings. This motion admitted directly or impliedly all of the well-pleaded facts in the return and left for consideration only issues of law.

In 1870, (Laws 1870, p. 79) the office of Public Printer was abolished and three state offices, to-wit, the Secretary of State, State Auditor and Register of Lands, were declared to be *ex officio* Commissioners of Public Printing and their duties were prescribed and their powers defined. Except in the charges allowed for composition (Laws 1873, p. 57), and the classification of the matter to be printed (Laws 1883, p. 126), and designating the place where the printing was to be done (Laws 1885, p. 219), the body of the law remained the same as originally enacted and was so incorporated in the revision of 1889 (Chap. 145, R. S. 1889). In 1891 (Laws 1891, p. 189) Section 7367, Revised Statutes 1889, was repealed and a new section enacted in which the duty of the Secretary of State was more fully and definitely defined in regard to the custody and furnishing of stationery required to be used by the contractor in the printing required to be done by him for the executive departments of the State.

In 1893 (Laws 1893, p. 215), the office of the Register of Lands having been abolished, the State Treasurer was made a member of the Board of Printing Commissioners.

At the revising session in 1899, Sections 7359 and 7360, Revised Statutes 1889, were amended in regard to the duties of the Secretary of State and the contractor concerning the printing required to be done for the General Assembly. These amendments are not material to this issue. In other respects the revised bill on public printing, as it appears in the Revised Statutes of 1899, is

the same as former statutes on this subject. The statute as thus enacted was carried forward without revision into the Revised Statutes of 1909 (Chap. 99, R. S. 1909). In 1919 (Laws 1919, p. 617), Section 10356 (Chap. 99, R. S. 1909), now Section 9714, was repealed and a new section enacted, which more clearly defines what is meant in this statute by the "executive departments of the State."

Aside from this amendment and one enacted in 1921 (Laws 1921, p. 568), concerning the terms of letting the contract for public printing, the statute of 1919, is the same as that of the preceding revision.

In addition to the foregoing epitome of the legislation on this subject, a resume of the relevant portions of the statute as it now exists is not inappropriate, not only as an aid in its interpretation, but as more clearly defining the reasons for the same.

This statute designated as "Public Printing" is embodied in Sections 9697-9721, Chapter 89, of the present revision.

Section 9697 designates the State officers who shall *ex officio*, during their respective terms, constitute the Commissioners of Public Printing.

Section 9698 divides the state printing into three classes; and provides that all of the printing for the executive departments (except pamphlets) shall constitute the third class.

Section 9699, as amended (Laws 1921, p. 568), provides that the Commissioners of Public Printing shall at stated intervals enter into two-year contracts with responsible persons for supplying the state printing; that the contracts for different classes of printing shall be made separately and may be entered into with different persons for different classes of printing; and that the successful bidders shall execute bonds to the State for the faithful performance of said contracts.

Section 9714 provides that: "Commissioners of printing shall examine the proof sheets of all work executed under the provisions of this chapter, and see that

they are correctly printed, and that all such work is executed in a suitable manner and in accordance with the requirements of this chapter. Said commissioners shall keep an accurate account of all papers delivered to the public printer or printers, and see that it is used properly and without unnecessary waste. All work to be executed for the executive departments shall be ordered through the Commissioners of Public Printing, and a requisition shall be obtained in advance signed by the head of the department ordering such work and said requisition shall be approved by the Commissioners of Public Printing, in the same manner as that provided in Section 9717 of this law respecting the examination of accounts. Executive departments shall in this and other sections of this chapter be construed to mean both the heads of said departments and the subordinate branches thereof, the boards, commissions, bureaus and officers appointed by the heads of said departments, except the boards of educational and eleemosynary institutions of the State. It shall be the duty of the commissioners to see that the full number of copies of each job is received from the printer and delivered to the proper department. No accounts shall be considered or approved by them or paid by the State Auditor unless the work for which it is rendered is done in accordance with the requisition obtained in advance and approved as herein provided, and if when the final copies are delivered they be less than the number called for in the requisition, the commissioners shall pay only for the actual number of copies delivered, and no account for composition shall be rendered or approved until the requisition for the order is returned to the commissioners and thereafter no charge for composition shall be made on that order. The Commissioners of Public Printing shall have the power to determine the number of copies and number of pages of subject material in each document printed under their supervision. They shall audit all accounts for printing and binding executed under the provisions of this chapter, and they shall keep a record of the cost of printing

and binding, the amount of paper used, and the entire expense of each document or item, and a copy of each document shall be duly filed and preserved by them, with the cost indorsed upon it.''

Section 9717 provides, among other things, that for all accounts for public printing, when indorsed by the commissioners, the State Auditor shall draw a warrant upon the Treasury for the amounts thereof, payable out of any money appropriated for that purpose.

Section 9721 provides that the Commissioners of Public Printing shall at stated intervals let contracts for supplying the executive departments as above defined, and both branches of the General Assembly for a term of one year with stationery (which includes lead pencils); that the successful bidder shall execute a bond to the State to protect the State from any loss that might accrue by the failure of the contractor to fulfill the contract.

The evident purpose of this statute is to promote the economical administration of that branch of the public service to which it has reference.

Facts admitted by the relator as a result of his motion for a judgment on the pleadings are that his account, based upon a claim for printing and stationery furnished to the State Highway Commission, on which this proceeding is based, was not in compliance with any of the provisions of the statute regulating public printing; that at the time the relator had no contract with the State to supply either stationery or printing to any of its departments; that such a contract made and executed under the law regulating public printing and the furnishing of stationery to the executive department of the State Government had been let to and was held by a contractor under the conditions and requirements of Chapter 89, Revised Statutes 1919; that the State Auditor refused to issue a warrant to relator in payment of his account on the ground that the purchase of all printing and stationery for the Highway Commission was controlled by Chapter 89, which had not been complied

with in this instance, and that said commission was without power to bind the State for this account.

I. The statute regulating public printing is limited in its purview to the executive departments. This term has been well defined elsewhere to include all acts which **Executive Departments.** public officers are required to perform by legislative authority and which they are bound to obey (Altemus v. New York, 6 Duer (N. Y.) l. c. 455), and to include all persons upon whom are imposed duties in the administration of public affairs as contradistinguished from legislative and judicial functions. [People v. Salsbury, 134 Mich. l. c. 549.]

The triune character of our governments, state and national, being the same, this definition is as applicable here as elsewhere. Its correctness, no one familiar with their character will question. Despite this fact the Legislature, whether prompted by what it regarded as an improperly limited judicial definition of the term, as applied to the law (Sec. 10356, R. S. 1909) then in force in regard to the duties of the printing commissioner, or for other reasons, repealed the same and enacted what is now Section 9714 of the present statute.

Although Section 10356 had provided generally that "all work to be executed for the executive departments of this State shall be ordered through the Commissioners of Public Printing" the Legislature, in the enactment of the new section (now Section 9714) provided, among other things, that "the executive departments shall in this and in other sections of this chapter" (now Chapter 89) "be construed to mean both the heads of said departments and the subordinate branches thereof, the boards, commissioners, bureaus and officers appointed by the heads of said departments, except the boards of educational, and the eleemosynary institutions of the State."

The authority of the Legislature to thus more clearly define the application of the term is in harmony with its recognized meaning of which we will take judicial

notice.  Aside from this, the power of a Legislature to define the objects affected or sought to be affected by its own enactments is beyond controversy.  [City of St. Louis v. Nash, 266 Mo. l. c. 530; State ex rel. Bank v. Allison, 155 Mo. l. c. 330.]

The moving impulse in the enactment of what is now Section 9714, Revised Statutes 1919, we have indicated.  Its intention was to include, so far as concerns the regulation of public printing, the executive division of the State Government as recognized by the Constitution, and all of its departments and the subordinate branches thereof, except the educational and eleemosynary institutions.  This was what was meant by the general provision of Section 9714 before its amendment.  The only effect of the definition in the amendment was to give legislative sanction in a definite and unmistakable manner to the meaning and application of the words as theretofore employed.  With this statute before us, but for the interposition of subordinate objections, which we will consider later, the solution of the question at issue would be but one of classification.

II.  Let us consider therefore in what manner the State Highway Commission should be classified.  It was created by a legislative enactment in 1921 (Laws 1921, 1st Ex. Sess., p. 132).  It consists of four members appointed by the Governor.  Its duties, generally stated, are the construction, improvement and maintenance of highways; and to that end auxiliary power is conferred necessary to the performance of the main purpose of the creation of the Commission (Sec. 14, Laws 1921, 1st Ex. Sess., p. 137).  Created by legislative enactment and clothed with powers therein defined, through the appointment of the Governor, under all recognized rules of construction it is, when properly classified, a subordinate branch of the Executive Department.  As such it is required, under the mandatory provisions of Chapter 89, to secure the

Highway Commission.

payment of its accounts for printing and the purchase of stationery in the manner prescribed in that chapter.

There is nothing in the act creating the Highway Commission which militates against the correctness of this conclusion. We are authorized to presume that the Legislature in framing the act was familiar with the constitutional and statutory restrictions regulating the payment of money out of the State Treasury for any purpose. In framing Section 12 of the act, therefore, providing that the supplies therein specified should be furnished to the commission (which was a proper provision, and not an unusual one in the creation of any department), it is prescribed that such supplies shall be paid for as "other expenses authorized by this act." In this specification no mention is made of printing. The reason therefor is evident. Cognizant of the fact that the Highway Commission was a branch of the Executive Department and that its printing must be paid for in the manner prescribed in Chapter 89, regulating public printing, it was omitted and properly so. Only by judicial legislation can any authority be vested in the commission to contract for its printing and demand payment by the State therefor in any other manner than prescribed in Chapter 89. An attempt to so construe its powers would be to ignore its character and violate the plain provisions of an applicable statute.

III.   There is nothing in the rulings in the case of State ex rel. v. Wilder, 199 Mo. 470, which, when intelligently analyzed, will support the contention of relator. That case had to do with the allowance of an account for printing furnished to the Insurance Department. Under the law then in force, as we have stated, there was only a general reference to the executive departments

Wilder Case. of the State, and without consideration as to what constituted such departments it was held to be a separate and distinct department of the State Government and was not subject to the provisions of the statute then regulating public printing. With the cor-

rectness of that ruling we need not concern ourselves, as it was rendered under different statutes from those we are now considering. Subsequent to the rendition of this opinion the Legislature repealed the section of the statute (Sec. 10356, R. S. 1909), in force at the time of the rendition of the Wilder opinion and enacted Section 9714, which, as we have shown, in addition to a general declaration as to the executive departments, specifically defined the same and all of their subordinate branches. Had this statute been in existence when the Wilder case was determined and the laws regulating the Insurance Department had been the same as those now applicable to the Highway Commission it is but a reasonable conclusion that the opinion in the Wilder case would have been different. Presumptions aside, however, the conclusion as to its not constituting a precedent in the instant case is authorized by the difference, not only in the statutes concerning the Insurance and Highway Departments, but in those in regard to public printing then and now.

IV.    The fact that the appropriation acts for the support of the Highway Commission during the biennial periods of 1923 and 1924 (Sec. 95, Laws 1923, p. 40) and 1925 and 1926 (Sec. 4, Laws 1925, p. 90), mention printing as a part of same and were enacted separately from the general appropriation acts is urged as a reason why the commission should not be required to conform to the requirements of the Public Printing statute (Chap. 89). It is difficult to ascertain with becoming patience wherein lies the logic of this contention. An appropriation act does no more than to set apart or designate the amount and the purposes for which the authorized expenditures may be made by the department named. Whether this be done in a general or a special appropriation act is immaterial in determining the manner in which the fund shall be expended. The manner of its expenditure is usually prescribed in the act creating the department or in a gen-

Appropriation Acts.

eral statute, as at bar, applicable to all departments of a class.

However, the Legislature in 1923, supplementing the general statute regulating public printing, provided that the Highway Commission and many other departments named in the act (Laws 1923, p. 75) should, in the expenditure of money appropriated for printing during that biennial term, have the same done under the direction and by the authority of the State Printing Commission. While this statute added nothing to the mandatory requirements of the general statute (Chap. 89) regulating public printing it emphasized the legislative construction of the law) as applicable to all of the executive departments, including that of the Highway Commission.

V.   Since the enactment of Section 9714, it is immaterial whether the Highway Commission is supported by fees or otherwise, so far as concerns the commission's inclusion within the terms of that statute. It **Fees: State Revenue.** is the character and not the source of the .fund it seeks to expend for printing and stationery that defines its duty and fixes the limit of the commission's power as to such expenditures.

The money out of which the Highway Commission is to be maintained is as much public or state revenue as any money coming into the State Treasury from any source.   Whether it is called motor-vehicle-registration fees, license fees or a tax (all of which designations are used in Section 44a of Article IV of the Constitution, *vide* Laws 1921, 1st Ex. Sess., p. 196), or by any other name, it is a tax levied by the State upon the right of motor vehicles to use the public streets and highways of the State.   It is not only levied by the State, but is collected by it and paid directly from the motor vehicle owners into the State Treasury (Laws 1921, 1st Ex. Sess., p. 104, sec. 28).   The State, therefore, is interested in what use is made of revenue from that source. So much is it interested that the people, in amending the Constitution (Sec. 44a, Art. IV, supra), declared that

all such taxes received by the State, less the costs of maintaining the State Highway Commission, should stand appropriated without legislative action for and to the payment of the principal and interest of certain state bonds and the accumulation of a sinking fund therefor. To say, therefore, that the State is not interested and vitally interested in the amount to be taken from this fund for the maintenance of the Highway Commission is not in accord with the people's action in amending the Constitution and that of the Legislature in creating the commission.

The term "state revenue" was recently defined by the Court en Banc in State ex rel. Thompson v. Treasurer of Teacher's College, 264 S. W. l. c. 700. In that case the court said:

"By revenue, whether its meaning be measured by the general or the legal lexicographer, is meant the current income of the State from whatever source derived which is subject to appropriation for public uses. This current income may be derived from various sources, as our numerous statutes attest, but, no matter from what source derived, if required to be paid into the Treasury, it becomes revenue or state money."

It thus appears that not only is the fund public revenue or state money, but it is public revenue of a very extraordinary kind, levied, collected and held by the State for two specific public uses, the major use of which is the payment and retirement of state bonds.

The case of State ex rel. v. Gordon, 266 Mo. 394, l. c. 419, relied upon by relator, has no bearing upon the legal issue presented in the case at bar. In that case the court was called upon to construe the term "ordinary revenue paid into the State Treasury" as used in the Appropriation Act of 1915, in order to determine how much money the State Auditor should set apart and certify for payment to the use of the public schools of the State.

Neither is the case of State ex rel. v. Walker, 240 Mo. l. c. 723, in any wise determinative of the relator's

contention. That case merely held that an attorney's fee in collecting inheritance taxes might be allowed and paid out of such tax after it was in the collector's hands and before it had been paid into the State Treasury.

VI. Further relying on the Wilder case as a precedent, relator seeks to show that the provisions of the Acts of 1923 and 1925, limiting the appropriations therein to the payment of claims for such printing only as is done under the direction of the State Printing Commission, are not binding in the case at bar. As we have heretofore stated, relator overlooks the fact that the Wilder decision was based upon the peculiar wording of the appropriation act then under review. The court there said that upon a careful analysis of the act it is seen that Section 1 of the Appropriation Act of 1905 (Laws 1905, pp. 1-12) starts out by saying that "there is hereby appropriated out of the State Treasury chargeable to the State Revenue Fund," etc; and it was not until Section 31 of that act was inserted that an appropriation was provided as a special fund for the Insurance Department. The court declares the importance of this situation and holds that under such circumstances the legislative mind, in dealing with general revenue in the first section of the act, did not have its attention directed to the printing for the Insurance Department which was to be paid for out of a special fund.

The court in the Wilder case, l. c. 489, in confirming the correctness of the above conclusion stressed the wording of the concluding portion of Section 31 of the Appropriation Act of 1905 by saying:

"The correctness of this conclusion is emphasized by the concluding part of Section 31 (Laws 1905, p. 7), which substantially provides that the expenses of the Insurance Department shall be paid only on the warrant of the State Auditor, which shall be drawn only on the requisition of the Superintendent of Insurance, duly made out and approved by him, stating specifically the purpose for which the money is to be applied."

No similar limitation or provision is contained in the acts now under review appropriating money for the payment of the printing of the State Highway Commission. Section 1 of the general contingent appropriation act of 1923 says: "There is hereby appropriated out of the State Treasury chargeable to the State Revenue Fund and special funds." [Laws 1923, p. 14.] In thus including special funds in the first section, it differs from Section 1 of the Appropriation Act of 1905, and the reason for the ruling in the Wilder case, supra, based upon the language of Section 1 of the 1905 Act, has no application in the case at bar.

The separate Appropriation Act of 1925, dealing with the support of the Highway Department (which is the appropriation act now in force and controlling the conduct of respondent in the case at bar), leaves no doubt concerning the subject. Among other things it provides for the payment of the printing for the Highway Department and in that act no other printing except printing for that department is provided for. And in that act the Legislature expressly said "all stationery, paper and printing provided for or to be paid for by money appropriated by this act shall be done under the authority and supervision of the State Printing Commission, as provided in Chapter 89 of Revised Statutes 1919." [Laws 1925, p. 92.] Thus it will be seen that the Legislature clearly had in mind the printing for the Highway Department when it required it to be done under the supervision of the Printing Commission.

*Legislative Construction.*

VII. Section 9717 of the Public Printing Act, supra, provides that after printing has been done in conformity with the act, "the State Auditor shall draw a warrant upon the Treasury for the amount thereof, payable out of any moneys appropriated for that purpose."

*Any Moneys.*

Relator insists that the phrase "any moneys appropriated for that purpose" should be construed to read

"any moneys in the general revenue fund appropriated for that purpose."

The phrase "any moneys in the Treasury appropriated for that purpose" as found in the statute is as clear and plain as language can be written. It simply means that the money must be in the State Treasury and that it has been appropriated by the Legislature to pay for certain printing.

There is no canon of construction that will justify the interpretation of the statute urged by the relator. The rule here applicable is well settled as stated by the leading authorities as follows:

"There is no safer or better settled canon of interpretation than that when language is clear and unambiguous it must be held to mean what it plainly expresses." [2 Sutherland Statutory Construction, par. 367, p. 702.]

"The Legislature must be intended to mean what it has plainly expressed, and consequently there is no room for construction." [Endlich, Interpretation of Statutes, par. 4, p. 6.]

"It is only in the case of ambiguous statutes or uncertain meaning that the rules of construction can have any application. When the language of a statute is plain and unambiguous and its meaning clear and unmistakable, there is no room for construction." [25 R. C. L. 957, par. 213.]

"When the language of a statute . . . conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation; the statute must be given its plain and obvious meaning. . . . The current of authority is in favor of reading statutes without resorting to subtle and forced constructions for the purpose of either limiting or extending their operation. . . . Seeking hidden meanings at variance with the language used is a perilous undertaking which is as apt to lead to an amendment of a law by judicial construc-

tion as it is to arrive at the actual thought in the legislative mind." [25 R. C. L. 962-3, par. 217.]

"Where the meaning of the language used is plain, it must be given effect by the courts, or they would be assuming legislative authority." [36 Cyc. 1107.]

"It is a very well-settled rule that so long as the language used is unambiguous, a departure from its natural meaning is not justified by any consideration of its consequences, or public policy; and it is the plain duty of the court to give it force and effect." [36 Cyc. 1115.]

VIII. Relator contends that Section 44a of Article IV of the Constitution appropriates, without further legislative action, money from the motor vehicle license taxes, for the payment of the maintenance of the State Highway Commission.

*Appropriation.*

The language thus sought to be construed by relator is as follows:

"Any motor vehicle registration fees or license fees or taxes, authorized by law, except the property tax thereon, less the cost and expense of collection and the cost of maintaining any State Highway department or commission, authorized by law, shall, after the issuance of such bonds, and so long as any bonds herein authorized are unpaid, be and stand appropriated without legislative action for and to the payment of the principal and interest of said bonds, and shall be credited to a sinking fund to be provided for by law." [See Sec. 44a, Mo. Const.; Laws 1921, 1st Ex. Sess., p. 196.]

This provision makes no attempt to appropriate, without legislative action, the money to pay the maintenance expense of the Highway Commission. It does appropriate without further legislative action that portion of the money received from automobile license fees which remains after deducting the cost of collecting the tax and maintaining the Highway Commission, and it appropriates the remainder to the payment of the principal and interest of certain bonds. It makes no attempt

whatever to appropriate without legislative sanction the amount needed for the expenses of the Commission. Who, therefore, is to determine the amount required to maintain the Highway Commission? Is this to be determined by the Highway Commission, unhampered by legislative permission, or by the Legislature in the regular way by an appropriation act?

Section 19, Article 10, of the Constitution of Missouri, expressly provides that no money shall be paid out of the State Treasury except in pursuance of an appropriation by law. This section controls unless modified by a later constitutional provision. It is true that Section 44a, supra, does modify it as to that portion of the automobile license tax to be paid upon the principal and interest of said bonds, but that is the only modification and there is nothing in Section 44a which in any manner conflicts with or prevents the provisions of Section 19, supra, from controlling with reference to all moneys paid out of the State Treasury for the support and maintenance of the Highway Commission. It thus clearly appears that that portion of the license tax which is to be paid out of the State Treasury for the expenses of maintaining the Highway Commission must under the express provisions of the Constitution (Sec. 19, supra) be first appropriated by act of the Legislature.

The above construction of the section was given by the General Assembly, succeeding the adoption of Section 44a of Article IV, supra (Laws 1921, 1st Ex. Sess., p. 104). That was the act providing for the levying, collecting and disbursement of the present motor vehicle license taxes or registration fees. Section 28 of that act provided that all such fees or taxes "shall be made payable to the State Treasurer," and after road bonds are issued said fees shall be deposited to the credit of a fund provided for in the Constitution. That act also contains the following significant language: "Provided, however, that appropriations for the cost of collecting such fees and appropriations for maintaining any State

Highway Commission authorized by law, shall be paid from such fees." This is as it should be. It would be a unique situation if the Highway Commission could determine for itself without legislative sanction, how much it would spend for its own maintenance.

IX.   Furthermore, the State Auditor is by express statute prohibited from approving or drawing a warrant in payment of relator's bill.

Section 9714, Revised Statutes 1919, in plain language (not in the statute when the Wilder case was decided), says: "No accounts shall be considered or approved by them or paid by the State Auditor unless the work [printing] for which it is rendered is done in accordance with the requisition obtained in advance and approved as herein provided."

*Payment.*

We have adverted to the provisions of the appropriation acts of 1923 and 1925, declaratory of the binding force of Section 9714, in subjecting to the regulation of the Printing Commission the payment of expenses of the Highway Commission for printing and stationery.

If, therefore, the respondent draws a warrant in favor of the relator, as contended by the latter, he must necessarily violate the plain letter and directions of not only the general statute (Chap. 89), but of the Constitution and above statutes referred to.

It further appears that no money has been appropriated out of which relator's bill, as herein submitted, can be paid.   And since under the provisions of Section 19, Article X, of the Constitution, no money may be paid out of the State Treasury, except in pursuance of an appropriation by law the respondent was and is without authority to issue a warrant in payment of relator's claim. For it cannot be said that a claim is paid pursuant to an appropriation act where it is paid out of money specifically appropriated for a different purpose.   And it might be said in passing, that the Legislature could not now pass a valid act appropriating money out of which

relator's claim could be paid, because his claim is based upon a contract entered into without authority of law and Section 48 of Article IV of the Constitution expressly prohibits the General Assembly from authorizing the payment of any claim hereafter created against the state under any agreement or contract made without express authority of law, and that all such authorized contracts shall be null and void.

X. As a somewhat general recapitulation of what we have heretofore said, it was clearly within the province of the Legislature, as declared in the enactment of Section 9714, supra, to say that the printing and stationery of the Highway Commission shall be included within the provisions of Chapter 89, regulating public printing. Nothing in that chapter attempts to prescribe the specific fund out of which claims for printing and stationery shall be paid. It is simply prescribed that such claims shall be paid out of any money in the Treasury appropriated for that purpose. This contemplates that the Legislature will biennially make appropriations with which to pay such claims. The contention, therefore, that claims for public printing and stationery must be paid out of the general revenue fund is without foundation. The Legislature having the power to say that claims for printing and stationery for the Highway Commission shall be paid under the provisions of the public printing act, it had the further right to say, as it has said in the appropriation acts cited and discussed, that such claims shall be paid out of the road fund.

This application having been considered from every vantage consistent with the rules of interpretation, the peremptory writ is denied.

*Blair, C. J., Graves, Ragland* and *White, JJ.,* concur; *Atwood, J.,* dissents; *Otto, J.,* not sitting.