THE STATE EX REL. COUNTY OF REYNOLDS V. STATE HIGHWAY COMMISSION.—42 S. W. (2d) 193.

Court en Banc, September 28, 1931.

860

*J. L. Huett, C. M. Buford, Ray B. Lucas, A. M. Meyer* and *Otto & Potter* for relator.

*John W. Mather* and *Wilkie B. Cunnyngham* for respondent.

862

GANTT, J.—Original proceeding in mandamus. Reynolds County, as relator, seeks to compel the State Highway Commission, as respondent, to refund moneys expended by said county in the construction of certain road and bridge projects therein. Respondent waived the issuance of the writ and made return to the four counts of the petition as and for the writ. The reply is specific denials with a plea that respondent is estopped to deny that the projects are in the State Highway system.

Count one seeks refund for the construction of a bridge across Logan Creek. Count two seeks refund for the construction of bridges across the west fork of Black River, across Mill Creek at Bonneys and across Mill Creek at Wilsons. Count three seeks refund for the construction of 11.827 miles of road extending from Centerville via Lesterville to Iron County. Count four seeks refund for the construction of five miles of road extending from Ellington to Nigger Hill. These projects originated under the Hawes Law (Laws 1917, p. 485). Relator and the State each contributed one-half of the costs.

Respondent admits liability under the first count and that $35,000 is available for payment of any refund due relator, and that relator elected to take its refund in cash, as authorized by Section 8127,

Revised Statutes 1929. But it contends that projects built under the Hawes Law are not refundable, even though taken into the State Highway system, and it denies that the projects mentioned in counts two, three and four of the petition have been taken into said system. On the other hand, relator contends that projects built under said law are refundable, and contends that the projects mentioned in said counts have been taken into said system. The questions for determination follow:

(1) Are projects built under the Hawes Law refundable if taken into said system?

(2) If the Hawes Law projects are refundable, have the projects mentioned in counts two, three and four been taken into said system?

It may be that it was proper to issue this alternative writ. On that question we entertain some doubt, for several reasons. However, it would be an injustice to refuse to rule the questions after we had proceeded to a submission of the case. [State ex rel. v. Bates, 235 Mo. 262, l. c. 282, 138 S. W. 482.] Therefore, we proceed; and

First: Are projects built under the Hawes Law refundable if taken into the State Highway system? This calls for a consideration of Section 8127, Revised Statutes 1929, which in part follows:

"Counties or other civil subdivisions shall be reimbursed for work done in constructing such part of a road or roads . . . which may become a part of the state highway system to the extent of the value to the state at the time taken over, due consideration being given to the type of road the state would have constructed had such road not already been constructed, provided that all reimbursements to the amount of six thousand dollars per mile shall be deducted from the apportionment made to each county. . . .

"Where money has been raised or set apart for the construction of roads which are designated as state highways, and contracts have been entered into requiring expenditure of said funds, and in all cases where said roads are under construction at the time this article shall take effect, the same may be completed; and the counties or civil subdivisions wherein said roads are constructed or to be constructed, shall have all the benefits of this section. . . ."

Respondent states its contention on this question as follows:

"From the passage of the Centennial Road Law and the taking of office by the state highway commissioners in 1921, to the present, Section 33 (the refund section of the Cen. Road Law, Laws 1921, 1st Ex. Sess., p. 164, now Sec. 8127, R. S. 1929) has been interpreted by the State Highway Commission of Missouri, and, with but few exceptions, by its employees, as authorizing only refunds on roads built under the Morgan-McCullough Road Law (Laws 1919, p. 650) where contracts were let, and that no refund could be paid on any

864

other road, though it may become a part of the State Highway system, and though its actual value to the State at the time taken over might be ever so great.''

It favors us with no reason for the contention. It is satisfied merely to make the same. We find no word in the section tending to exclude projects not built under contract. And we find no word therein tending to exclude projects built under the Hawes Law. All such projects may be within the beneficial provisions of the section. The contention is overruled.

Second—Have the projects mentioned in counts two, three and four been taken into the State Highway system?

The question should be of easy solution. The commission is required to keep full and true records of its proceedings. [Sec. 8097, R. S. 1929.] Indeed, as a general rule, its acts can be shown only by its official records. [Norborne Land Drainage Dist. v. Cherry Valley Twp., 31 S. W. (2d) 201, l. c. 208.] Relator contends there is no record showing the roads constructed and taken into the State Highway system. Answering this contention, respondent directs attention to the testimony of its assistant chief engineer. He testified that the engineering department of the State Highway system submitted to the State Highway Commission all plans showing the location and route of roads recommended for construction as a part of said system. He further testified that the action of the commission on all such plans was recorded by its secretary. Respondent contends this made a complete record of the roads constructed and taken into said system.

In view of its contention that there was no record showing the roads constructed and taken into the State Highway system, relator pleads as follows: ''Further answering said return to said count, relator states that all of said improvements were designed and constructed in accordance with the plans and specifications prepared and approved by the State Highway Board of Missouri and the State Highway Commission of Missouri and that the work when completed was approved by the respondent and the State Highway Board of Missouri; relator further states that the respondent has long since incorporated said improvements into the State Highway System of Missouri and made them a part and parcel of State Highway No. 21, as laid out by the respondent; that the respondent has been for many years in the exclusive, open, adverse possession of said improvements, keeping the same in repair and exercising exclusive jurisdiction thereof, and that by reason of all such facts, it is estopped to deny either the value of said improvements or that it has incorporated the same into the State Highway System of Missouri.''

As stated, these projects originated under the Hawes Law, construction continued under the Morgan-McCullough Law, and the

bridges mentioned in count two were completed after the Centennial Law had become effective. Certain maps on file with the Commission designate these projects as State roads. Obviously, these roads could not have been taken into the State Highway system before the Centennial Law became effective. Therefore, the activities of State and other road officials in connection with the construction of these roads, prior to the effective date of the Centennial Law, may be put aside as not tending to show that these projects had been taken into the system.

It should here be noted that no road or bridge is designated by the Centennial Law as a part of the State Highway system. We have so held. [Castilo v. State Highway Commission, 312 Mo. 244, 279 S. W. l. c. 676, 679-680; State ex rel. v. State Highway Commission, 315 Mo. 747, l. c. 755, 287 S. W. 39.] Even so, relator contends that certain evidence in the form of minutes, letters and resolutions of the State Highway Commission and its employees tend to show that these projects had been taken into the State Highway system.

It directs attention to the following:

"The Commission instructed State Highway Engineer Graham to compile complete information regarding all sections of the present state highway system that have been constructed in cooperation or with local funds in order that the commission can make plans for preserving as much of the original construction as possible."

This order only tends to show that it would be the policy of the Commission to incorporate Hawes and Morgan-McCullough Law projects into the State Highway system, where proper to do so. The words "present state highway system" as used in this order do not refer to the Centennial highway system, but to roads built under the Hawes and Morgan-McCullough Law.

It next directs attention to the activities of the State Highway Commission in behalf of the adoption of an amendment to the Constitution authorizing the use of funds for the maintenance of roads. The amendment authorizing the $60,000,000 bond issue did not make provision for the maintenance of roads. Thereupon provision was made for the submission of an amendment to the Constitution authorizing the use of certain funds for said purpose. The State Highway Commission and other officials of the department were active in support of this amendment. In the meantime it requested the counties to maintain the roads therein pending a vote on the amendment. It also announced by resolution that it would take over these projects and maintain them if the amendment was adopted. This resolution and other communications of a similar nature were presented to the County Court of Reynolds County. On adoption of the amendment the commission authorized the State Highway En-

gineer to take over and maintain these projects. He did so and the maintenance of these roads and bridges by the commission has been continued to the present time. This does not tend to show that these projects have been permanently taken into the State Highway system. It does tend to show that they have been temporarily taken over and maintained pending the completion of the State Highway system.

While no road or bridge is designated by the Centennial Law as a part of the State Highway system, the enactment of said law was not an abandonment of roads and bridges. Pending completion of the State Highway system, all projects were temporarily a part of said system. This condition is recognized in Amendment 44a, Article IV, of the Constitution, authorizing the issuance of bonds in the sum of $135,000,000 for the construction and completion of the State Highway system. In that amendment provision is made for refunds after projects have been taken over by the State as *permanent* parts of the State Highway system.

It next directs attention to the following:

"The chief engineer advised the commission that there are a number of short sections of improved road in the State now being maintained which are not on the designated State Highway system. Short stretches of highways which were built under the McCullough-Morgan Law using Federal Aid are now being maintained by the State, even though they are not a part of the State system; proper maintenance of Federal Aid sections of road heretofore built is necessary to secure Federal Aid on other new projects. He declared it is not desirable to have a large number of short sections of road to maintain that are not on the State system.

"The chief engineer was therefore instructed to advise the respective counties and districts that the State could not longer maintain such sections of road, as it was now maintaining the State roads, and if the county or district refused to maintain such roads to the satisfaction of the Government, then and then only would the State formally abandon the section of improved road and refund to the Government the money it has invested in said road."

This order referred only to "short sections of improved road" not located between or connected with "control points" designated in the Centennial Law. It also does not tend to show that these projects had been taken into the State Highway system.

The opinion will not be lengthened by setting forth these minutes, letters and resolutions. We have examined them and find no word therein tending to show that these projects have been taken into the State Highway system. They do tend to show that when the Centennial Law became effective and the Commission organized, maps were made of the numerous projects over the State and a policy announced to maintain these projects pending the completion of the

system. In furtherance of this policy, it designated and marked these and other projects as part of the system.

However, at the hearing before our special commissioner, respondent admitted that the Logan Creek Bridge, except a part of the south approach thereto, had been taken into the State Highway system, and that the value to the State of the part taken was at the time taken $10,668.96. It also admitted that if said part of the south approach is held to be a part of the State Highway system for which refund is due, its value to the State at the time taken was $462.62.

Respondent is not authorized to refund for abandoned projects or parts thereof. It is only authorized to refund for projects or parts thereof taken into the system. [Sec. 8127, R. S. 1929.] However, if an abandoned bridge is moved and incorporated into the system at another point, it would be refundable to the county or civil subdivision participating in its construction. Relator contends that it should be refunded for this approach for the reason its abandonment destroys its usefulness to the county. The county owns no roads or bridges. It is entitled to no refund on the theory of ownership. It is so entitled on the theory of its voluntary aid in the construction of projects. The officials of the county and other civil subdivisions are agents of the State in the performance of their duties with reference to bridges and roads. [Reardon v. St. Louis County, 36 Mo. 560; Tebbs v. Platte Co., 28 S. W. (2d) 656; Moxley v. Pike Co., 208 S. W. 246; Lamar v. Bolivar Sp. Rd. Dist., 201 S. W. 890; State ex rel. v. Drainage Dist., 269 Mo. 444, 457, 190 S. W. 897, 900; Laws 1917, p. 488.]

It follows that under counts two, three and four of the petition our peremptory writ of mandamus should be denied, and said counts as and for our alternative writ should be dismissed. It also follows that under count one of the petition our peremptory writ of mandamus should be issued directing and commanding respondent to set up a refund account in the sum of ten thousand, six hundred and sixty-eight dollars and 96 cents ($10,668.96) to the credit of Reynolds County, out of State Road Funds apportioned and apportionable to said county, and directing and commanding respondent to honor the requisition and demand of Reynolds County for the payment of said sum out of said refund account and to issue its proper voucher therefor upon the State Auditor. It is so ordered. All concur.