DR. W. B. BUSH, Appellant, v. STATE HIGHWAY COMMISSION OF MISSOURI.—46 S. W. (2d) 854.

Division Two, February 17, 1932.

*Pierre A. Vogel* and *N. G. Sevier* for appellant.

*John W. Mather, B. F. Boyer* and *J. Marvin Krause* for respondent.

FITZSIMMONS, C.—The question for decision in this case is whether respondent, the State Highway Commission of Missouri, may be sued for the tortious acts of its agents and employees. It is a question of first impression in this State. Appellant, Dr. W. B. Bush, brought suit in the Circuit Court of Cole County against respondent for $10,000 damages for personal injuries and the demolition of his automobile, alleged to have been caused by a collision with an auto truck of defendant on Highway No. 66 near Waynesville, in Pulaski County, Missouri. The petition charged that appellant's injuries and the destruction of his automobile were directly caused by the negligence of respondent's employee in operating the truck at a high and dangerous rate of speed, upon the wrong side of the road and without lights; in failing to exercise proper control over the truck or to give appellant warning, and in not observing the humanitarian rule. Respondent demurred to the petition upon the ground that the court did not have jurisdiction of the subject-matter of the action and that the petition did not state facts sufficient to constitute a cause of action. The trial court sustained the demurrer, and, appellant declining to plead further, rendered a final judgment from which appellant appealed to this court.

I. Appellant contends that he is entitled to maintain his action because, by Section 8102, Revised Statutes 1929 (Sec. 12, Act of August 4, 1921, Laws 1921, 1st. Ex. Sess., pp. 131 to 167) "the commission may sue and be sued in its official name, and for the purpose of suit and other legal proceedings, service may be had on the secretary." He also urges his right to maintain the instant action under the authority of the decision of this court in the case of State ex rel. State Highway Commission v. Bates, 296 S. W. 418. In that case two copartners doing business under the name of Highway Commission Company, sued the State Highway Commission of Missouri in Jasper County upon a contract for road construction in Howard County.

The plaintiffs, in the first count of their petition, sued for $16,000, balance due upon the contract, and, in the second count, they sued for $10,000, damages caused, in the doing of the road work contracted for, by the alleged arbitrary delays and exactions of the Highway Commission. These details are taken from the original files in this court, for the opinion (296 S. W. 419) merely states that the suit was for damages on a contract. Plaintiffs in the action in Jasper County caused service of summons to be had in that county constructively upon an engineer of the commission, and also in Cole County upon the Secretary of the commission. The State Highway Commission brought an original action in prohibition in this court, and the preliminary writ was made absolute. The reason for the rule was, that, under the act creating the commission, it is clear that the domicile of the commission is in Jefferson City, Cole County, Missouri, since the secretary, upon whom service is to be had, must be a resident of Jefferson City, in charge of an office there, to be provided by the Commission of the Permanent Seat of Government. [Sec. 8102, R. S. 1929.] Upon this question of domicile of the commission the court, in its opinion in State ex rel. v. Bates, says:

"It is clear, from the Act of 1921, that the State desired this entity to be sued, and the differences between it and the citizens of the State adjusted by the courts; but it is likewise clear that the domicile of the commission is in Jefferson City, Cole County, Missouri. Throughout the act, the sundry provisions disclose a clear intent to make it plain that, while this entity was building a road system for the State, the habitat of the commission is and should be in Jefferson City, the seat of the State government, and, further, that while the State desired that the commission should be sued, it was to be sued in Cole County, where all the maps, books, papers, contracts, and such like are kept."

It can hardly be said that these words of the opinion would sustain a suit of the nature of the action here in question. Both before and after the decision in State ex rel. v. Bates, supra, this court in sundry suits has adjusted differences which arose while the Highway Commission was building a road system for the State.

Castilo v. State Highway Commission, 312 Mo. 244, 279 S. W. 673, was a suit by tax-paying citizens to enjoin the defendant from constructing a state highway along a certain route located by the defendant though Howard, Boone, Callaway, Montgomery, Warren and St. Charles counties, which route, plaintiff contended, was distant from one to ten miles from the route described in the State Highway System Act (Laws 1921, 1st. Ex. Sess., pp. 131 to 167). The trial court sustained a demurrer to the petition and, upon appeal, this court en banc in a majority opinion affirmed the judgment upon the ground that the bill did not state a cause of action. But the court

en banc held that the first ground of the demurrer, namely, that the plaintiffs had no capacity to sue, was not well taken. [Castilo v. State Highway Commission, supra.] Although in that case there were two separate concurring opinions and two separate dissenting opinions, there was no dissent from the proposition that plaintiffs had capacity to sue. Judge GRAVES, who later wrote the opinion of the court in State ex rel. v. Bates, supra, said in his dissenting opinion, Castilo v. State Highway Commission, 279 S. W. 1. c. 681: "That a commission has run wild, and violated the law, in the construction of hard surfaces upon roads, should have no influence upon a clean-cut exposition of the law."

State ex rel. Liberty Township, Stoddard County, v. State Highway Commission (Mo. Sup.), 287 S. W. 39 (decided by this court before State ex rel. v. Bates, supra), was an original proceeding in mandamus to compel respondent to refund to the township a certain sum of money which the township had placed to the credit of the commission to construct a highway between two towns in that township and which money the commission had so used. The writ was denied on the merits of the case and not on any question of capacity to sue.

In the mandamus case of State ex rel. McKinley Publishing Co. v. Hackmann, State Auditor, 282 S. W. 1007, which was also decided before State ex rel. v. Bates, supra, this court denied the asserted right of the State Highway Commission to buy printing and stationery supplies independently of the Commission of Printing and the statutes governing the letting of contracts for public printing. The court in its opinion said:

"It would be a unique situation if the highway commission could determine for itself without legislative sanction, how much it would spend for its own maintenance."

And quite recently and since the decision in State ex rel. v. Bates, supra, in the case of State ex rel. Reynolds County v. State Highway Commission, 328 Mo. 859, 42 S. W. (2d) 193, this court granted its writ of mandamus directing the commission to set up a refund account in the sum of $10,668.96 to the credit of Reynolds County out of the state road funds apportioned to that county.

Thus, we see that before, as well as after the decision of State ex rel. v. Bates, this court has enforced against the State Highway Commission in proper cases the statutory liability of that body to be sued. And properly so, because the commission has vast powers. Under authority of Section 44a, Article IV of the Constitution, adopted at the general election held November 6, 1928, the commission has power to expend upon the state system of highways without legislative action the additional bond issue of $75,000,000 authorized by that amendment, and to expend for the like purpose, without legislative ac-

tion, the excess over bond issue requirements, of all motor vehicle registration fees and state taxes on motor vehicle fuels. Prior to the enactment of the State Highway System Act, approved August 4, 1921, the people at the election held in November, 1920, had adopted another constitutional amendment, also known as Section 44a of Article IV, authorizing a bond issue of $60,000,000, for road building purposes. And the General Assembly therefore was prudent in providing in the Act of 1921 that the State Highway Commission to which it was giving the powers which ever since it has exercised, "may sue and be sued in its official name." If the State Highway Commission, with $135,000,000 of bond moneys subjected to its control and with other vast sums derived from specified taxes expended by it annually without legislative appropriation were not liable to the discipline of the courts in proper cases, it would be like the monster of whom we read in Mrs. Shelley's Frankenstein (1817). Frankenstein, a student, constructed out of the fragments of bodies picked from churchyards and dissecting-rooms, a human form without a soul. The monster had muscular strength, animal passions, and active life but no breath of divinity. It longed for animal love and animal sympathy, but was shunned by all. It was most powerful for evil, and, being fully conscious of its own defects and deformities, sought with persistency to inflict retribution on the young student who had called it into being. The monster felt that it was unlike other human beings, and in revenge it murdered the friend, the brother and the bride of its creator. It tried to murder Frankenstein, but he escaped. However, the monster hid from the eye of man, in the Ultima Thule of the Habitable globe, and slew Frankenstein on his way home. The State of Missouri has not created such a monster.

But the waiver by the State for itself or its officers or agents of immunity from an action is one thing. Waiver of immunity from liability for the torts of the officers or agents of the State is quite another thing. This distinction is well made in the case of Smith v. State of New York, 227 N. Y. 405, 125 N. E. 841, 13 A. L. R. 1264. The State of New York acquired the property known as the State Reservation at Niagara and by statute provided for its management through a board of five commissioners, appointed by the Governor. The plaintiff tripped and fell over a wire strung on iron posts in the reservation and sued the State of New York before the Court of Claims for a substantial amount on the theory that the wire had been negligently placed and maintained by the officers and agents of the State. The question presented by the appeal was whether the immunity of the State from liability for the tortious acts of its officers and agents had been waived by Section 264 of the New York Code of Civil Procedure. The pertinent part of this Section reads:

"The Court of Claims possesses all of the powers and jurisdiction of the former Board of Claims. It also has jurisdiction to hear and determine a private claim against the State. . . . In no case shall any liability be implied against the State, and no award shall be made on any claim against the State except upon such legal evidence as would establish liability against an individual or corporation in a court of law or equity."

The Court of Claims gave judgment for the plaintiff and an appeal was taken by the State to the Appellate Division, Third Department, where the judgment was affirmed. But the New York Court of Appeals reversed the judgment of the lower courts and dismissed the claim. The Court of Appeals in its opinion said much that is pertinent to the question here under examination. For example (13 A. L. R. 1. c. 1266): "The rule is well settled that the State is not liable for injuries arising from the negligence of its officers and agents, unless such liability has been assumed by constitutional or legislative enactment. [Cases cited and quoted.]

"The exemption of the State from liability for the torts of its officers and agents does not depend upon its immunity from action without its consent, but rests upon grounds of public policy that no obligation arises therefrom. [Authorities cited.] It is contended by the respondent . . . that the State assumed this obligation by the enactment of the section of the Code of Civil Procedure to which reference has been made. I am of the opinion the section does not bear such construction. It was not enacted, as it seems to me, for the purpose of extending or enlarging the liability of the State, but solely for the purpose of declaring the jurisdiction of the Court of Claims, before which questions of liability might be tried.

"It is true, as urged, that the section confers upon the Court of Claims jurisdiction of the broadest character. The State, under the terms of the section, must be treated as having waived its immunity against actions as to all private claims. [Authorities cited.] But it is thoroughly established that by consenting to be sued the State waives its immunity from action, and nothing more. It does not thereby concede its liability in favor of the claimant, or create a cause of action in his favor which did not theretofore exist. It merely gives a remedy to enforce a liability and submits itself to the jurisdiction of the court, subject to its rights to interpose any lawful defense. [Authorities cited.] . . . Statutes in derogation of the sovereignty of the State must be strictly construed, and a waiver of immunity from liability must be clearly expressed."

The proposition that the State is not subject to tort liability without its consent is too familiar to deserve extended citations of authorities. [Story on Agency (9 Ed.) sec. 319; Gibbons v. United States, 8 Wall. 269, 19 L. Ed. 453.]

II.   But appellant has sued respondent as "a corporation duly organized and existing according to law," and he contends that this court ruled in State ex rel. v. Bates, supra, that the Highway Commission is a corporation and does not enjoy the immunity from suit which is a prerogative of the sovereign State.   It is true that the court in its opinion in State ex rel. v. Bates, supra, says of the State Highway Commission (296 S. W. l. c. 420):

"It is an entity, with powers of a corporation, established and controlled by the State for a specific public purpose, but that does not make this legal entity the sovereign State.   No contract it is authorized to make is made in the name of this State, but in the name of the commission.   The sovereign State could have contracted for the building of its public highways in its own name, but it chose to create a legal entity for this work."

And the court also said in that opinion (296 S. W. l. c. 420):

"Such is the status of this commission.   It is not the State, but a mere entity created by the State, for the specific purpose of contracting for the building of state highways and bridges and the maintenance of the same and doing all other things pertaining thereto."

But, the court, in its opinion, points out that the State Highway Commission is not a private business corporation, since the General Assembly could not make it such under the inhibition of Section 2 of Article XII of the Constitution.   "Nor could it [the General Assembly] create a quasi-public corporation by such a law" (State ex rel. v. Bates, 296 S. W. l. c. 422).   Finally the court declares that the State Highway Commission is not a corporation as contemplated by what are now Sections 723 and 735, Revised Statutes 1929 (296 S. W. l. c. 422-3).   In fact the opinion goes no further than to say that the commission is a legal entity, which of course it is.

But the views expressed by the court in State v. Bates, supra, do not subject the commission to liability for the tortious acts of its servants and employees.   Appellant leans heavily upon Tompkins v. The Kanawha Board, 19 W. Va. 257, which we later will examine. Suffice it for the present to say that a Virginia case (Dunningtons v. President and Directors of the Northwest Turnpike Road, 6 Grattan's Reports, 160), cited and quoted with approval in the Tompkins case, points out the distinction between the instant case and the case which this court examined in State ex rel. v. Bates, supra. In Dunningtons v. President etc. of the Northwest Turnpike Road, plaintiff sued for labor done and material furnished.   The trial court sustained a demurrer to the declaration upon the ground that defendant, although a corporation, was composed of the Governor and other state officers, and it acted merely as an organ of the Commonwealth in effecting a public improvement, and as such it was not

subject to an action in assumpsit. The Northwest Turnpike Road by statute might sue and be sued, as may be the State Highway Commission of Missouri. The defendant in the Dunningtons case relied upon Sayre v. The Northwest Turnpike Road, 10 Leigh, 454, an action for tort in which the Court of Appeals of Virginia held that no action would lie against the corporation. But the Virginia court thus distinguished the Dunningtons case upon contract from the Sayre case sounding in tort (6 Grattan's Reports l. c. 171):

"It was not decided in the case of Sayre v. The N. W. Turnpike Road, 10 Leigh, 454, that no action will lie against this corporation; all that the case decided, was that the action would not lie against this company for the injury there complained of. The suit was brought to recover damages for a remote and consequential injury to the property of the plaintiff. The declaration averred that, owing to the defective construction of a bridge by the company, it fell, and was carried by the stream against the mill and dam of the plaintiff, whereby they were destroyed. The reasons which governed the court, in holding that an action for such an injury could not be maintained against this company, are not given."

The distinction between the facts and issues in State ex rel. v. Bates and the issues which appellant seeks to raise here clearly appears. Section 8104, Revised Statutes 1929, provides that "the commission shall: (9) Let all contracts for the construction or improvement of state highways." And as we read State ex rel. v. Bates, the court merely held the commission to the performance of its obligation under such a contract, even as the court, in other cases cited, has adju ted differences which arose while the Highway Commission was building the road system. [State ex rel. v. Bates, supra]. This distinction between liability upon contracts validly made and non-liability for torts applies to counties. A contract, when made with legal authority on account of a county, will be enforced against the county. [McDonald v. Franklin County, 2 Mo. 217]. The contract upheld in this case was for the building of a courthouse for a newly created county. On the other hand, "counties are quasi-corporations, created by the Legislature for purposes of public policy and are not responsible for the neglect of duties enjoined upon them unless the action is given by statute." [Reardon v. St. Louis County, 36 Mo. 555.] This last case was an action for damages for the death of plaintiff's husband, who, while traveling on a highway at night, fell off a bridge and was killed. The defendant county was charged with negligence in not providing guard rails upon the bridge. The trial court sustained a demurrer and this court affirmed the judgment.

III. A further reason for denying to the opinion of this court in State ex rel. v. Bates, supra, the meaning and scope which appellant

would read into it, is to be found in the case of State ex rel. McKinley Publishing Co. v. Hackmann, State Auditor, 314 Mo. 33, 282 S. W. 1007. This, as was the opinion in State v. Bates, supra, was by the court en banc. Four judges concurred in the opinion of WALKER, J., in the Hackmann case. One judge dissented and one did not sit. As has been stated heretofore in a reference made to the Hackmann case in another connection, this was an original proceeding in mandamus to compel the respondent, the State Auditor, to issue a warrant upon the State Treasury to pay for certain printing and stationery alleged by the relator to have been furnished to the State Highway Commission. The peremptory writ was denied upon the ground that the purchase of printing and stationery for the State Highway Commission was subject to the laws governing the purchase of such necessaries by the Commission of Public Printing. In arriving at this conclusion, the court in its opinion said (282 S. W. l. c. 1010):

"Let. us consider, therefore, in what manner the State Highway Commission should be classified. It was created by a legislative enactment in 1921 (Laws 1921, 1st. Ex. Sess., p. 132). It consists of four members appointed by the Governor. Its duties, generally stated, are the construction, improvement, and maintenance of highways; and to that end auxiliary power is conferred necessary to the performance of the main purpose of the creation of the commission. [Sec. 14, Laws 1921, 1st. Ex. Sess., p. 137.] Created by legislative enactment, and clothed with powers therein defined, through the appointment of the Governor, under all recognized rules of construction it is, when properly classified, *a subordinate branch of the executive department*. As such it is required, under the mandatory provisions of Chapter 89, to secure the payment of its accounts for printing and the purchase of stationery in the manner prescribed in that chapter." (Italics ours).

The opinion reviewed the source of the road funds which the State Highway Commission administers, and concluded (282 S. W. 1011):

"It thus appears that not only is the fund public revenue or state money, but it is public revenue of a very extraordinary kind, levied, collected, and held by the State for two specific public uses, the major use of which is the payment and retirement of state bonds."

At the time the opinion was rendered in State v. Bates, supra, the antecedent case of State ex rel. v. Hackmann, supra, was the law on the proposition that the State Highway Commission was "a subordinate branch of the executive department." State ex rel. v. Hackmann was not overruled by State ex rel. v. Bates. The decision that the State Highway Commission was "a subordinate branch of the executive department" was essential to the determination of the issues raised in State ex rel. v. Hackmann and the classification given to the

854

commission by the last named decision is the law of the instant case. It thus having been determined that the commission is a subordinate branch of the executive department, it is not liable in tort for the acts of its agents and employees upon grounds of public policy heretofore stated.

IV. The case of Tompkins v. The Kanawha Board, 19 W. Va. 257, upon which appellant relies to support his views of the liability in tort of the State Highway Commission, is not in point. For the origin and history of the Kanawha Board we must look to the decision of the Court of Appeals of Virginia in the case of James River and Kanawha Company v. Early, 13 Grattan's Reports, page 541. This case was decided at the July term, 1856, when what is now the State of West Virginia was known as the Trans-Allegheny region of Virginia. West Virginia was created a state and was admitted to the Union June 20, 1863, as a result of conditions developed by the Civil War.

We find from an examination of the case of James River etc. Co. v. Early that the company was created by the Assembly of Virginia by an Act entitled "An Act incorporating the stockholders of the James River and Kanawha Company," passed March 16, 1832. Measures theretofore adopted by the General Assembly of Virginia for the purpose of connecting the tide waters of the James River with the navigable waters of the Ohio River having been found inadequate to effect that object, the act provided for the opening of books for subscribers of the capital stock of a new company in which the State of Virginia was to take ten thousand shares. It thus appears that this company was a stock corporation and it existed for profit as well as public benefit, and it derived its revenue from tolls laid upon cargoes of vessels. After the creation of West Virginia as a separate state the rights and franchises of the James River and Kanawha Company were, by the act of the West Virginia Legislature of March 3, 1869, transferred to the State of West Virginia and then conferred upon the Kanawha Board. [Tompkins v. Kanawha Board, 19 W. Va. 1. c. 263]. The decision therefore of the West Virginia Supreme Court of Appeals that the Kanawha Board, a stock corporation, was liable in damages for the loss of a barge and its cargo of salt, caused by the negligence of the Board in permitting the Kanawha River at a given point to be obstructed by logs and driftwood, cannot be persuasive in the instant case. The construction and maintenance of roads and highways is one of the most ancient prerogatives of government. [See Roads and Highways, Historical Review, Volume 23, Encyclopaedia Americana. Also see dissenting opinion of WALKER, J., in Castilo v. State Highway Commission, 312 Mo. 244, 279 S. W. 673, 1. c. 686.] Government assumed

as a prerogative the control of the posts and the establishment of postoffices in times quite recent compared with its exercise of authority over highways and roads. The authority of the State of Missouri, through its Highway Commission, a branch of its executive department, over its system of highways was completely established by the Act of August 4, 1921. And it would be against the public interest to rule that the State Highway Commission was subject to liability for the tortious acts of its agents and employees.

V. Other points of minor importance have been raised by appellant. They have been found to be without merit. But a detailed examination of them would prolong this opinion to undue length.

Whatever has been said herein concerning the suability of the State Highway Commission is addressed to the determination of the question of law raised by this case and is not to be taken as a statement of any of the circumstances or cases in which the Highway Commission may be sued.

For the reasons herein given the judgment of the trial court is affirmed. *Cooley, C.,* concurs; *Westhues, C.,* not sitting.

PER CURIAM:—The foregoing opinion by FITZSIMMONS, C., is adopted as the opinion of the court. All of the judges concur.