THE STATE EX REL. LIBERTY TOWNSHIP OF STODDARD COUNTY v. STATE HIGHWAY COMMISSION.

Court en Banc, October 8, 1926.

1. **MANDAMUS: Motion for Judgment: Facts Denied.** In a mandamus suit by a municipal township its allegation that its money was placed to the credit of the respondent at respondent's request and upon its promise that said money would be refunded to relator as provided by Section 34 of the Centennial Road Law, if specifically denied in respondent's return, drops out of the case upon the filing by relator of a motion for judgment upon the pleadings and a submission of the case upon the pleadings.

2. **STATE HIGHWAY SYSTEM: Location: Existing Public Road.** The Centennial Road Law of 1921 did not locate any road. In saying that the route of the state highway system should begin "at the Stoddard-Cape Girardeau county line near the western boundary of Cape Girardeau county, thence in a southerly direction through Advance, Bloomfield, Dexter and Bernie to the Stoddard-Dunklin county line," it did not say that the then road between Dexter and Bernie was accepted and declared to be a part of the state highway system. The Act did not locate any road; it only designated the general route and directions, and left to the State Highway Commission the actual location of the road, and by its enactment the road between Bernie and Dexter, though then in the process of being hard-surfaced, did not become a part of the state highway system.

3. **PUBLIC ROAD: Constructed by Township: Under Supervision of State Commission: Refund of Moneys Expended.** A public road, begun under the existing law prior to the enactment of the Centennial Road Law of 1921, and constructed with township funds and Federal aid, in compliance with the requirements of the prior law, including the requirement that it be constructed in accordance with surveys, plans, specifications and contracts approved by the State Highway Department and under the supervision of the department and the United States Bureau of Public Roads, but not completed until after the enactment of the Act of 1921, was not constructed under the supervision and according to the plans of the State Highway Department as provided in the Act of 1921, but as provided in the prior law, which was the Act of 1919, and was not a part of the state highway system, and the township is not entitled to be reimbursed for the moneys expended by it on the theory that the road was constructed by the State Highway Commission under the provisions of the Act of 1921.

4. ———: ———: **Materiality: Reimbursement.** Section 34 of the Centennial Road Law of 1921 applies only when a county or other civil subdivision expends funds of its own, arising from a road tax on bond issue, in the building of the state road system within the county or civil subdivision as designated in the act, provided the construction of the road is under the supervision and according to the plans of the State Highway Department; and it is very material, in determining whether a civil sub-

division is entitled to be reimbursed for the money expended by it in the construction of a road, to determine whether the road was constructed under the supervision and according to the plans as provided by the Act of 1921, and where the facts show that it was not so constructed, but at the time the Act of 1921 became a law or prior thereto the road was not a part of the state road system, but its construction was requested, commenced, prosecuted and completed as a Federal-aid project under the prior law, the civil subdivision is not entitled to compel the State Highway Commission to refund the moneys expended by it in the construction of the road. But it is entitled, under Section 33 of the Act of 1921, to be reimbursed in additional roads, where said road after said act became effective. was accepted as and became a part of the state road system.

5. ——————: ——————: **Reimbursement in Additional Roads: Time of Construction: Discretion.** Under Section 33 of the Centennial Road Law of 1923, a township is entitled to be reimbursed in additional roads, to be constructed under state supervision, for a road constructed by it and completed under the prior laws and already constructed when it became a part of the state ' highway system, to the full extent of the moneys expended by it in the construction of the road taken over as a part of the state road system; but the State Highway Commission is entitled to a reasonable discretion in the determination of the time when such additional roads shall be constructed.

Corpus Juris-Cyc. References: **Highways,** 29 C. J., Section 309, p. 583, n. 65; **Pleadings,** 31 Cyc., p. 607, n. 31.

Mandamus.

PEREMPTORY WRIT DENIED.

*Wammack & Welborn* for relator.

(1) It is not material whether the work for which the money relator seeks to recover was furnished under the McCullough-Morgan Law or the Centennial Road Law. The pleadings show that it was furnished by relator after the Centennial Law took effect, and that the work was done under respondent's supervision and was accepted by respondent as a part of State Highway No. 25. These facts entitle relator to have the sum refunded to it in cash. Laws 1921 (1st Ex. Sess.) p. 164, secs. 33 and 34. (2) The law requires that respondent reimburse relator in money for sums expended by relator after the · Centennial Law took effect in constructing any part of the state highway system under respondent's supervision, as soon as funds in the apportionment to relator out of the state road funds are available for that purpose. Laws 1921 (1st Ex. Sess.) p. 165, sec. 34; Laws 1925, p. 289, sec. 17. (3) By said Section 34 it is provided that where a county or other subdivision has expended funds in constructing a part of the state highway system, respondent shall refund such sum out of the apportionment of the state road funds. The word "shall" is always construed to be mandatory, depending upon the subject of

the sentence and the context with which it is related. Even the word "may" is interpreted to be mandatory when referring to "a power given to public officers, which concerns the public interest and the rights of third persons, who have a claim *de jure* that the power shall be exercised in this manner." Hannibal & St. Joe Ry. Co. v. State Board of Equalization, 64 Mo. 304; State ex rel. v. King, 136 Mo. 318; Spauling v. Suss, 4 Mo. App. 551. (4) In the construction of a particular statute, or in the interpretation of any of its provisions, all acts relating to the same subject, or having the same general purpose, should be read in connection with it, as together constituting one law. The endeavor should be made to ascertain the uniform and consistent purpose of the Legislature. Grimes v. Reynolds, 184 Mo. 688; Curtis v. Sexton, 252 Mo. 24ℑ; State ex rel. v. Gmelich, 208 Mo. 159; State ex rel. Special Road Dist. v. Barry County, 302 Mo. 288; State ex inf. v. Koeln, 270 Mo. 191; State ex inf. v. Standard Oil Co., 218 Mo. 355; State ex rel. v. Patterson, 207 Mo. 144.

*North T. Gentry*, Attorney-General, and *L. Newton Wylder, Lue C. Lozier* and *Edgar Shook* for respondent.

(1) The road in question was built under the McCullough-Morgan Law and not under the Centennial Road Law. Secs. 1, 2, Centennial Road Law, Laws 1921 (1st Ex. Sess.) p. 133; State ex rel. v. Imel, 280 Mo. 560; Reagan v. County Court, 226 Mo. 89; Sec. 14, Laws 1921 (2nd Ex. Sess.) p. 37; McCullough-Morgan Law, Art. 11, Chap. 98, R. S. 1919; State v. Gmelich, 208 Mo. 159; State ex rel. v. State Tax Comm., 282 Mo. 213; Grimes v. Reynolds, 184 Mo. 673; State ex rel. v. Patterson, 207 Mo. 144; State ex rel. v. Standard Oil Co., 218 Mo. 355; In re Kinsella Estate, 293 Mo. 556.  (2)  Any refund or reimbursement to relator should be in additional roads pursuant to Section 33 of the Centennial Road Law, and should not be made under Section 34 of said law.  (3)  A discretion is vested in the State Highway Commission as to when refunds will be made. Secs. 4, 26, 33, 30, 32, 24, 40, 34, 37, Centennial Road Law, Laws 1921, 1st Ex. Sess.; Laws 1925, pp. 286, 90, 289, 326; Sec. 14, Laws 1921 (2nd Ex. Sess.) p. 37.  (4)  The discretion vested in the State Highway Commission will not be controlled by the courts. State ex rel. v. Stone, 269 Mo. 342; State ex rel. v. Hudson, 226 Mo. 265; 22 Cyc. 879; Kerr on Injunctions (2 Am. Ed.) p. 4; High on Injunctions (4 Ed.) sec. 1326.

ATWOOD, J.—This is a direct proceeding in mandamus to compel the State Highway Commission of Missouri to refund in cash the sum of $31,643.31 to Liberty Township, Stoddard County, Missouri, on account of money placed to the credit of said highway commission by

said township to be used in the construction of a highway between Dexter and Bernie in said township, and by said highway commission so used. Respondent entered its appearance and waived service of the alternative writ. Relator filed a motion for judgment on the pleadings which necessitates our stating them somewhat at length.

The petition, in addition to formal allegations, asserts that the part of the "state highway system" in Stoddard County, Missouri, lying between Dexter and Bernie and extending south to the Stoddard-Dunklin county line, is a part of State Highway No. 25, lies within the boundaries of Liberty Township, and that prior to the passage and approval of the act of the General Assembly in 1921, commonly known as the Centennial Road Law, bonds of said Liberty Township for road purposes in the sum of $145,000 had been issued and sold, and on January 24, 1923, Liberty Township had funds in the sum of $36,250.37 arising from said bond issue; that at the request of the Missouri State Highway Commission and upon its promise that the same would be refunded to relator as provided by Section 34 of the Centennial Road Law, relator deposited in the First National Bank of Dexter, Missouri, on January 24, 1923, to the credit of the Missouri Highway Commission—project 211-A, the aforesaid $36,250.37, and between January 24, 1923, and September 17, 1924, the State Highway Department expended of said funds $31,643.31 in grading and hard-surfacing that part of said "state highway system" within said county and within Liberty Township, lying between the city of Dexter and the city of Bernie, the same being a part of State Highway No. 25; that the construction of said part of said highway for which said funds were used was under the supervision and according to the plans of said State Highway Department, as provided by said Centennial Road Law; that said road has been completed and accepted by said State Highway Department as a part of the "state highway system;" that the apportionment of Liberty Township and Stoddard County of the state road funds as provided by the Centennial Road Law is sufficient to repay said money to relator, and that funds arising from the state road funds are and were at the time of making the requisition hereinafter referred to available for making said repayment; that relator and the County Court of Stoddard County have made requisition upon respondent for the repayment of said sum of $31,643.31 to relator, but respondent has refused and still refuses to honor said requisition or to cause said money to be repaid to relator.

Respondent's answer admits the formal allegations of relator's petition; admits that the part of the "state highway system" in the county of Stoddard lying between Dexter and Bernie and extending south to the Stoddard-Dunklin county line of State Highway No. 25, lies within the boundaries of Liberty Township, and that prior to the passage and approval of the Centennial Road Law, bonds of said Lib-

erty Township for road purposes in sum of $145,000 had been issued and sold, and that on January 24, 1923, Liberty Township had funds in the sum of $36,250.37 arising from said bond issue; admits that on January 24, 1923, relator deposited in the First National Bank of Dexter, Missouri, to the credit of respondent said sum of $36,250.37, as part payment of the estimated cost of constructing Federal Aid Project No. 211A, and between January 24, 1923, and September 17, 1924, respondent expended of said funds $31,643.31 in the construction, grading and hard-surfacing of said project, and that such construction was under respondent's supervision and according to its plans, and that said project has been completed and is now a part of the "state highway system" in Stoddard County lying between Dexter and Bernie, being a part of State Highway No. 25; admits that the funds in the state road fund to the credit of Stoddard County (under the provisions of Section 26 of the Centennial Road Law` for this biennial period, were at the time of the making of the requisition hereinafter referred to, and now are, sufficient to repay to relator said sum of $31,643.31; admits that relator and the County Court of Stoddard County have made requisition upon respondent for the repayment to relator of said sum, and that respondent has refused to honor said requisition or to cause said sum to be repaid to relator. Respondent denies that said sum of $31,643.31 was advanced by relator at the request of respondent, or upon respondent's promise that the same would be refunded to relator in cash as provided in Section 34 of the Centennial Road Law; denies that said project was constructed under the provisions of said Centennial Road Law or under Section 34 thereof; denies that relator has any legal right to have said sum repaid to it in cash, or that relator has any legal right to demand reimbursement for said sum at this time; and denies that it is the clear, legal and ministerial duty of respondent to honor the aforesaid requisition at this time and to certify same to the State Auditor for his warrant and for payment out of the state road fund. Further answering, respondent alleges that now, and at the time of the making of said requisition, certain portions of the State Highway in Stoddard County designated in said Centennial Road Law have not yet been constructed, graded or surfaced or placed under contract, and that portions of said "state highway system" in said county formerly built by civil subdivisions in said county under the provisions of the McCullough-Morgan Road Law must be improved or reconstructed or resurfaced by concrete pavement by respondent; that it was and is the intention and purpose of respondent to use funds now in the state road fund to the credit of Stoddard County for this biennial period in the construction or in the improvement of portions of said road, and in the opinion, belief and judgment of respondent, such construction and improvement are more expedient and economical at the present time

than the reimbursement in cash or additional roads to Stoddard County, Liberty Township, or any other civil subdivisions in Stoddard County entitled thereto; that under the provisions of said Centennial Road Law respondent is vested with the discretion of determining when refunds, either in additional roads as provided in Section 33, or in cash as provided in Section 34, shall be made to counties or other civil subdivisions entitled thereto; that funds now in the state road fund to the credit of Stoddard County are not now available for refunding purposes; and that in applying for the writ of mandamus herein prayed for relator is attempting not to compel the doing of a ministerial duty enjoined upon respondent, but to control a discretionary power vested in respondent by law. Further answering, respondent alleges ''that on the 7th day of July, 1920, by an order made and entered of record, relator applied, under the provisions of Section 10901, Revised Statutes 1919, to the State Highway Board for Federal aid in the cost of constructing said Project 211A, and in such application assented to the provisions of Article XI, Chapter 98, Revised Statutes 1919, known and referred to as the McCullough-Morgan Law, and certified that the funds of relator were available and were thereby appropriated to be applied on the cost of constructing said road; that on the 27th day of February, 1922, relator's said application was accepted and approved by respondent, and the chief engineer of respondent was authorized to make the necessary surveys, plans and specifications as provided for in Section 10901, Revised Statutes 1919; that said chief engineer did make said surveys, plans and specifications, and said surveys, plans and specifications were approved by respondent; that on the 4th day of May, 1922, said project was submitted to the Secretary of Agriculture of the United States, in a 'Project Statement' required by the Federal Aid Road Act, said project statement reciting that the proposed work was to be done under the direct supervision of respondent under the aforesaid McCullough-Morgan Law; that said project statement was approved by said Secretary on the 17th day of July, 1922; that on the 14th day of November, 1922, said Secretary approved the surveys, plans and specifications for said project; that on the 12th day of December, 1922, respondent entered into the 'Project Agreement,' required by the Federal Aid Road Act, on said project; that on the 24th day of January, 1923, relator deposited said sum of $36,250.37 as alleged in said petition; and that between said 24th day of January, 1923, and the 17th day of September, 1924, said project was constructed, in pursuance of the terms of a contract entered into on the 30th day of December, 1922; that said project was constructed under the provisions of said McCullough-Morgan Law (as extended in Section 2 of the Centennial Road Law), and was not constructed under the provisions of Section 34 of said Centennial Road Law; that the cost

of constructing said project was paid, not by respondent with funds arising under and made available for construction purposes by the terms of said Centennial Road Law, but by relator and the United States Government; that respondent paid no portion of the cost of said project from state funds except the sum of $360 which was available from legislative appropriations for the carrying out of the provisions of said McCullough-Morgan Law; that under the provisions of said Centennial Road Law, respondent was and is required to apportion and expend Federal-aid funds in the same manner as state-bond-issue funds, namely, between the primary and secondary systems of state highways, and, further, to allot and apportion secondary-highway-construction funds among the several counties; that under the provisions of said McCullough-Morgan Law, no such apportionment of Federal-aid funds was required, but on the contrary respondent was vested with a certain discretion as to where in this State said Federal-aid funds could be expended; that under the provisions of said McCullough-Morgan Law, relator was entitled to secure Federal aid in the cost of constructing said project to the extent of fifty per cent of the cost thereof, and did so secure Federal aid in the construction of said Project 211A, to the extent of fifty per cent of the cost thereof; that such fifty per cent Federal aid could not have been secured by relator or any other civil subdivision in the construction of any project constructed under the provisions of said Centennial Road Law, and that the cost of construction of Project 211A could not have been paid as it was paid except under said McCullough-Morgan Law. Respondent further alleges that relator is not entitled to any reimbursement at this time for said sum of $31,643.31, and, further, that, when entitled to reimbursement, in the premises such reimbursement for said sum must be made by respondent in additional roads as provided in said Section 33; and that respondent has entered upon its books and public records, to the credit of relator, said sum of $31,643.31 to be expended, as provided in said Section 33, in the construction of additional roads in Liberty Township, when in the opinion, discretion and judgment of respondent, funds in the state road fund to the credit of Stoddard County are available for this purpose.''

Relator's allegation that its money was placed to the credit of the Highway Commission at its request and upon its promise that said money would be refunded to relator as provided by Section 34 of the Centennial Road Law, was specifically denied in respondent's answer, and this issue dropped out of the case when relator asked for judgment on the pleadings. The issues now before us are (1) whether relator shall be reimbursed in additional roads under Section 33 of the Centennial Road Law or in cash under Section 34 of said law, and (2) when such reimbursement shall be made. Relator contends

315 Mo.—48.

that it should be made now and in cash, while respondent says that it should be made in additional roads, but, whether made in additional roads or in cash, the time when such reimbursement shall be made is to be determined by the State Highway Commission in the exercise of its sound discretion.

I. Relator's first point reads as follows: "It is not material whether the work for which the money relator seeks to recover was furnished under the McCullough-Morgan Law or the Centennial Road Law. The pleadings show that it was furnished by relator after the Centennial law took effect, and that the work was done under respondent's supervision and was accepted by respondent as a part of State Highway No. 25. These facts entitle relator to have the sum refunded to it in cash." In support of this point relator cites Sections 33 and 34 of the Centennial Road Law found on pages 164-5, Laws of 1921, First Extra Session, which read as follows:

"Sec. 33. *May reimburse counties or civil subdivisions, when—not to exceed $6,000 per mile.*—Counties or other civil subdivisions shall be reimbursed for work done in constructing such part of a road or roads which may become a part of the state highway system to the extent of the value to the State at the time taken over, due consideration being given to the type of road the State would have constructed, had such road not already been constructed, provided that all reimbursements to the amount of six thousand dollars per mile shall be deducted from the apportionment made to each county, and all reimbursements in excess of $6,000 per mile shall be made out of the one-third of the state road funds set apart and available for the construction of a higher-type road than properly bound gravel road. Reimbursements shall be in the form of additional roads to be constructed in that county connecting with the system and constructed under state supervision, or, all or a part of said sum may be used to construct a higher-type road than that proposed by the commission as part of the state highway. Where money has been raised or set apart for the construction of roads which are designated as state highways and contracts have been entered into requiring the expenditure of said funds, and in all cases where said roads are under construction at the time this act shall take effect, the same may be completed; and the counties or civil subdivisions wherein said roads are constructed or to be constructed, shall have all the benefits of this section. Where two or more counties or minor subdivisions or minor subdivisions in two or more counties have constructed a road which is taken over as a part of the state highway system and reimbursement is to be made under the provisions of this section, reimbursement shall be made to each county or minor subdivision in proportion to the

funds contributed by each in the construction of the roads taken over, and those constructed therewith in each county or in the territory of the minor subdivision of each county. Providing that the county or other subdivision thereof shall not receive as refund under this act a greater sum than has been expended on said section of road so taken over by the State, by the said county or subdivision thereof.

"Sec. 34. *County or civil subdivision may be reimbursed for money expended—when—how.*—Any county or other civil subdivision having funds of its own arising from a road tax or bond issue may expend said funds in the building of the state road system within said county or other civil subdivision as designated in this act; provided the construction of said roads is under the supervision and according to the plans of the highway department as provided for in this act, and all money so expended by any county or other civil subdivision shall, to the extent of the apportionment of such county or other civil subdivision herein provided for, be repaid to such county or other civil subdivision, as soon as funds arising from the state road fund are available for that purpose. Requisition therefor shall be made by the county court and shall be honored by the proper officer of the State Highway Department."

In line with their point first above stated counsel for relator say in their brief that "the Legislature intended, as expressed in Section 33, that all work done or contracted at the expense of the civil subdivision at the time the Centennial Road Law took effect should be repaid or refunded in other roads, . . . Said Section 33 relates to expenditures by the civil subdivisions made or contracted to be made on the roads becoming a part of the state highway system before the Centennial Road Law took effect."

Relator apparently stands on the erroneous assumption that the road in question between Dexter and Bernie became a part of the "state highway system" on the passage and approval of the Centennial Road Law. It is true that this act contained an emergency clause declaring the same effective from and after August 4, 1921, the date of its passage and approval, and Section 29 thereof created and established "a state-wide connected system of hard-surfaced public roads" to be known as the "state highway system," consisting of highways along routes described therein, one of which routes is there designated as "beginning at the Stoddard-Cape Girardeau county line near the western boundary of Cape Girardeau County, thence in a southerly direction through Advance, Bloomfield, Dexter and Bernie to the Stoddard-Dunklin county line." However, we are not to conclude from this that the road between Dexter and Bernie upon which relator's money was expended became a part of the "state highway system" on August 4, 1921. The mere passage of this act

did not *ipso facto* make any particular road a part of the "state high-way system." At the time of the passage of this act many "state roads" had been constructed or were being constructed under the McCullough-Morgan Road Law (Art. XI, Chap. 98, R. S. 1919), which contemplated the construction of "approximately six thousand miles of roads" during the years 1919, 1920 and 1921 (Sec. 10896, R. S. 1919), also Federal-aid roads under the same law (Secs. 10897, 10901, R. S. 1919), and other public roads were then in existence, under construction, or being provided. Naturally, in many instances two or more roads connected two or more places or points consecutively named in the routes described in the Act of 1921. The General Assembly in framing the Centennial Road Law in 1921 described the routes composing the "state highway system," but wisely refrained from locating, designating or making any road between any of the places or points named in describing the routes a part of the system. The roads were to be thereafter "located, acquired, constructed, reconstructed," etc., by the State Highway Commission and so become parts of the state highway system. In the majority opinion in Castilo v. State Highway Commission, 312 Mo. 244, 279 S. W. l. c. 676, we said: "The only thing done toward the location of the routes comprising the state highway system was to name certain towns, lines, and points in each county through which they should pass. It clearly follows that the location of the routes of the entire highway system between these named towns, lines, and points was, under that portion of Section 29 which preceded the proviso now under consideration, left to the sound discretion of the Highway Commission." In a concurring opinion in the same case, WHITE, J., said (l. c. 679): "Section 29 creates a 'state-wide connected system of hard-surfaced public roads . . . which shall be located, acquired, constructed,' etc. If such roads are to be 'located' and 'acquired,' then the commission, if any one, is empowered to 'locate' and 'acquire' them between designated points. That is not only implied, but expressed, in the terms of Section 4, by which the commission is vested with '*all* powers necessary or proper to enable the commission . . . to carry out fully and effectively all the purposes of this act.' In carrying out the purposes of the act, the commission must 'locate' the roads, for, except at certain designated points, they are not located, even at the county lines. That is an original duty. It involves no change of lines or points, and the word 'change' used in the proviso cannot apply to the discharge of that duty." Also, RAGLAND, J., who concurred in the majority opinion, said in his concurring opinion (l. c. 680): "The state highway system was not made up of public roads existing at the time of the passage of the act. Note the language of Section 29: 'There is hereby created and established a state-wide connected system of hard-surfaced public roads, . . . which shall be located, acquired, con-

structed, reconstructed, and improved . . . along the following described routes.' In the description of the routes by counties which immediately follow, there is not a single reference to an existing public road or survey. Nor does the next section (Section 30) refer to surveys previously made as descriptive of the routes; it merely provides that such surveys shall be utilized whenever practicable. The only means given for ascertaining the routes intended are named points and general directions, and the general directions are merely incidental, performing no other function than that of identifying the points designated.''

Turning to Section 34 of the Act of 1921, counsel for relator say that the construction of the road in question was ''under the supervision and according to the plans of the highway department as provided for in this act,'' and therefore, relator is entitled to be repaid in cash as provided therein. As we read the acts of 1919 and 1921 counsel for relator are again in error. Under the pleadings and stipulation filed the construction of the road between Dexter and Bernie upon which relator's money was expended was clearly undertaken, prosecuted and completed under the McCullough-Morgan Law as a Federal-aid project, commenced pursuant to written request made by relator on July 7, 1920, under Section 10901, Revised Statutes 1919, which was a part of this law. Among the copies of documents stipulated to be taken as a part of respondent's answer is one entitled ''Certificate of Appropriation, etc., for State and Federal Aid Road Project,'' executed by the Township Board of Trustees of Liberty Township in Stoddard County under date of July 7, 1920, and appropriating $44,200 of its funds then available to be applied on the construction of approximately thirteen miles of the north-and-south state highway road between Dexter and Bernie in accordance with the act of the General Assembly approved March 13, 1917 (Laws 1917, pp. 485-492), as amended by an act of the General Assembly approved March 17, 1919 (Laws 1919, pp. 650-660, now Art. XI, Chap. 98, R. S. 1919, and known as the McCullough-Morgan Law), estimated to cost approximately $8,000 per mile, said township therein assenting to the provisions of said act and requesting that the State Highway Board and the United States Secretary of Agriculture set aside from the State Road Fund and the Federal aid funds apportioned to the State of Missouri by said Secretary of Agriculture a like sum in addition to the sum of $1,200 a mile provided for in said act for said thirteen miles, said township pledging full compliance with all the requirements of said act, including a requirement that the project be constructed ''in accordance with surveys, plans, specifications, contracts and estimates. as approved by the State Highway Department'' and ''under the supervision of the State Highway Department and the United States Bureau of Public Roads.'' This was relator's initial

step undertaken months before the passage of the Centennial Road Law and in strict compliance with the McCullough-Morgan Law then in force. Under the facts admitted by the pleadings the successive steps indicated by this law were taken by relator, respondent (acting under and by virtue of its succession to the powers and duties by this law previously conferred and imposed on the State Highway Board), and the United States Secretary of Agriculture, culminating in the expenditure of relator's said funds in the construction of said road in accordance with surveys, plans and specifications approved by the Missouri State Highway Commission and the United States Secretary of Agriculture, the work being done under the direct supervision of said State Highway Commission under the aforesaid McCullough-Morgan Law, as parts thereof composing Sections 10896 to 10905, both inclusive, and Section 10907, Revised Statutes 1919, were permitted to remain in force by Section 2 of the Centennial Road Law, which expressly provided that the powers and duties conferred and imposed upon the State Highway Board, under the sections of the McCullough-Morgan Law thus continued in force, should be exercised and discharged by the State Highway Commission created under the provisions of the Act of 1921. It is clear, therefore, that the construction of the road here in question was not under the supervision and according to the plans of the State Highway Department as provided for in the Act of 1921, but as provided for in the McCullough-Morgan Law of 1919.

But, relator argues, it is immaterial whether in doing this work respondent proceeded under the McCullough-Morgan Law or under the Centennial Road Law. We think it is very material in the determination of whether or not relator is entitled to reimbursement in cash under Section 34 of the Centennial Road Law. Section 34 of the Act of 1921 by its terms applies only where a county or other civil subdivision expends funds of its own arising from a road tax or bond issue *in the building of the state road system* within such county or other civil subdivision *as designated in this act, provided the construction of said roads is under the supervision and according to the plans of the highway department as provided for in this act.* We have just ruled that relator's case does not come within the terms of this proviso. Under our construction, previously adverted to, of the law of 1921 creating and establishing the state highway system, that its mere passage and approval did not *ipso facto* make any road a part of the system, it appears that at the time relator's money was expended on the road between Dexter and Bernie *it was not a part of the state road system as designated in the Act of 1921,* because that act provided, and we have construed it to mean, that the state highway system therein designated should be composed of roads "which shall be located, acquired, constructed, reconstructed," etc.

(Sec. 29, Laws 1921, 1st Ex. Sess., p. 145) by the State Highway Commission. It was requested, commenced, prosecuted and completed as a Federal-aid project, but it did not thereby become a part of the State Highway System as designated in the Act of 1921. Respondent's answer admits that "said project has been completed and accepted by respondent; and that said project is now a part of the state highway system in Stoddard County, lying between Dexter and Bernie," but we find no admission therein that this road became a part of the state highway system prior to its completion and acceptance by the State Highway Commission. The reasonable inference from this pleading, and the fact that the road was undertaken, prosecuted and completed as a Federal-aid project under the McCullough-Morgan Law, is that it did not become a part of the state highway system designated by the Act of 1921 until after its construction. It follows that relator's case also fails to come within the first requirement of Section 34, and failing to come within the class of cases contemplated by this section, we hold that relator is not entitled to be reimbursed in cash.

II. Is relator entitled to be reimbursed in additional roads? We hold it is. Not only does respondent admit as much in its pleadings, but relator is clearly entitled to this relief under the broad terms of Section 33 providing that (italics ours): "Counties or other civil subdivisions shall be reimbursed for work done in constructing such part of a road or roads *which may become a part of the state highway system* to the extent of the value to the State at the time taken over, due consideration being given to the type of road the State would have constructed had such road not already been constructed," etc. The record before us has led us to the conclusion that the road in question was already constructed when it became a part of the state highway system as designated in the Act of 1921, and relator's case thus falls within the above provision. Under the admitted pleadings relator is entitled to be reimbursed in additional roads to the full extent of its money expended in the construction of the road in question. By the terms of Section 33, however, such additional roads are "to be constructed under state supervision" and are to connect with the system. We think it naturally follows that respondent is entitled to exercise a reasonable discretion in the determination of the time when such additional roads shall be constructed, and we so hold. In deciding this case it is not necessary for us to determine whether or not the State Highway Commission is vested with a discretion to fix the time when reimbursements in cash shall be made in cases falling within the terms of Section 34, and we express no opinion on this question.

Peremptory writ denied. *Blair, C. J., Ragland, White* and *Otto, JJ.,* concur; *Walker, J., dubitante; Graves, J.,* absent.