THE STATE EX REL. JAMES N. RUSSELL, M. C. POLFER AND F. E. THOMPSON v. STATE HIGHWAY COMMISSION.—42 S. W. (2d) 196.

Court en Banc, September 28, 1931.

944

*L. E. Durham, W. C. Hock* and *Henry S. Conrad* for relators.

946

*John W. Mather, Jean Paul Bradshaw, John C. Collet* and *B. F. Boyer* for respondent.

948.

*Lue C. Lozier, Amicus Curiae.*

*Arch B. Davis, Herman Pufahl* and *Robert L. Ward, Amici Curiae.*

950

ELLISON, J.—This is an original proceeding in mandamus. The relators are citizens, freeholders and taxpayers of Jackson County, and owners and operators of motor vehicles upon which they regularly pay the registration fees and gasoline tax imposed by the laws of this State (Secs. 7762, 7794, R. S. 1929). They sue on behalf of themselves and all taxpayers similarly situated. The object of the proceeding is to compel the respondent, the State Highway Commission, to take cognizance of and pass upon a petition filed before it by the relators, petitioning for the widening and improving of United States Highway, Route No. 40, to a width of eighty feet *from the east city limits of Kansas City, Missouri, through Leeds, to 31st Street,* at the expense of the State from funds derived from the state road bond issue authorized by Section 44a, Article IV, of the Constitution, adopted in 1928. Throughout this whole distance the highway lies within the corporate area of Kansas City.

The Highway Commission has filed a return to the petition (waiving issuance of our alternative writ of mandamus) in which it is set up that under said section of the Constitution it has no power or authority to widen and improve the part of the highway involved, because it is located *within the corporate limits of Kansas City.* Without joining issue by reply to any of the facts pleaded in the return, the relators have filed a motion for judgment on the pleadings, which has the effect of admitting all facts well pleaded in the return. [State ex rel. Hueller v. Thompson, 316 Mo. 272, 275, 289 S. W. 338, 339; State ex rel. Tompkins v. Shipman, 290 Mo. 65, 71, 234 S. W. 60, 61.] Thus are raised clear-cut questions of law as to the construction to be put upon the provisions appearing in the above mentioned constitutional amendment.

In addition to the exhaustive briefs of the parties we have been favored with an able brief submitted by three members of the bar, Hon. Arch B. Davis, Herman Pufahl and Robert L. Ward, as *amici curiae,* who suggest our alternative writ should be quashed; and with another brief, equally able and pointed, filed on behalf of the Kansas

City Chamber of Commerce by its attorney, Hon. Lue C. Lozier, as *amicus curiae*, which contends the writ should be made peremptory. Altogether, the field of investigation has been well covered.

Section 44a of Article I-V of the Constitution, adopted by a referendum vote at the general election in 1928, at which time it was generally referred to as "Proposition No. 3" for the seventy-five million dollar road bond issue, is about three pages long as printed in the 1929 statutes. We shall only summarize it. The preceding section, Section 44, forbids the General Assembly to contract or to authorize the contracting of any debt or liability in behalf of the State, or to issue bonds or other evidences of indebtedness thereof, except in specified cases. Section 44a adds another exception. The parts particularly bearing on the use that may be made of the proceeds from the bond issue for road construction and improvement may be condensed as follows:

The first paragraph provides generally that ".the General Assembly shall, for the purpose of locating, establishing, acquiring, constructing, widening and improving hard-surfaced public highways in the State and in each county thereof, and of acquiring materials therefor and for the purpose of locating and constructing bridges across the rivers and waters of the State and of participating in the construction of toll-free, interstate bridges, have the power . . ." to issue bonds in the amount and on the terms specified.

The third paragraph provides: "The proceeds of the sale of the seventy-five million dollars ($75,000,000) of additional bonds herein authorized shall be expended under the direction and supervision of the State Highway Commission for the following purposes: To complete and widen or otherwise improve the state system of. primary and secondary highways as designated and laid out under existing law; to reimburse the various counties and political or civil subdivisions (including road districts) of the State for money expended by them in the construction or acquisition of roads and bridges now or hereafter taken over by the State as permanent parts of the state highway system to the extent of the value to the State of such roads and bridges at the time taken over, not exceeding in any case the amount expended by such counties or subdivisions in the construction or acquisition of such roads and bridges; to construct other state highways and bridges, and to widen or otherwise improve existing state highways and bridges in the congested traffic areas adjacent to the cities of St. Louis and Kansas City; to locate, establish, acquire and construct supplementary state highways and bridges, as hereinafter provided, in each county of the State, in addition to those state highways and bridges designated and laid out under existing law, and to acquire materials therefor."

. The fourth paragraph names the sources of revenue from which the principal and interest due on the bonds shall be paid, including

certain fees, licenses and taxes less the expense of collection and the cost of maintaining the State Highway Department and State Highway Commission, etc. This net revenue above the annual requirements for interest and sinking fund for the bonds is to be credited to the State Road Fund "to be administered and expended under the direction and supervision of the State Highway Commission for the following purposes:" Here again follows an enumeration of the purposes, which are in the identical language appearing in the third paragraph, just set out, save for a few immaterial differences in punctuation and in the transposition of one phrase, and also in that the words "and maintain" are inserted as a part of each enumerated purpose. Further, a clause is added at the end of the paragraph broadening the powers of the Commission in certain respects.

Without attempting a critical construction of these two paragraphs of the section, it seems the proceeds from the bond issue are to be used only for construction and improvement work, and to reimburse counties, etc., for highways taken over, whereas moneys derived from the specified revenue sources above the requirements for paying off the bond issue may be used for those purposes and for maintenance as well. See Sections 8144-8148, Revised Statutes 1929. That point is not up for decision in this case, and we mention and consider these paragraphs only insofar as they have bearing on the question as to what kind of road building and improvement the State Highway Commission may do out of the proceeds of the bond issue.

The seventh paragraph provides that funds required to be allocated to the construction of "supplementary" state highways and bridges (mentioned in the third and fourth paragraphs) shall be apportioned to the counties of the State on the basis of area and population by dividing into two equal parts such funds as may at any time be allotted by the Commission; one part to be apportioned to all of the counties of the State, exclusive of the cities of St. Louis and Kansas City, in the ratio that the *area* of each county bears to the area of the whole State, exclusive of the cities of St. Louis and Kansas City; and the other part to be apportioned to the counties in the ratio that the *population* thereof (exclusive of said cities) bears to the population of the entire State exclusive of said cities.

The eighth paragraph provides that said supplementary state highways shall be selected by mutual agreement of the State Highway Commission and the officials of such counties or political or civil subdivisions (including road districts) having charge of or jurisdiction over the roads in the territory through which such supplementary state highways are to be built.

The ninth paragraph figures large in this controversy. It is as follows: "In order to connect state highways as designated and laid out under existing law with other such highways or with highways

in adjoining states, and also in order to facilitate and expedite the movement of through traffic, the State Highway Commission is hereby authorized and empowered to locate, construct, and maintain from the funds herein provided for construction of primary and secondary highways and from the State Road Fund, highways and bridges not exceeding in the aggregate three hundred (300) miles as a part of and to be added to the said state highway system, and from such funds the State Highway Commission is hereby also authorized and empowered to locate, construct, and maintain highways and bridges in state parks, now or hereafter established, and connect the same with the primary or secondary highways of the State."

The tenth paragraph provides: "All the highways and bridges to be constructed and improved with the funds herein provided, shall be constructed, improved and maintained under the direction and supervision of the State Highway Commission, which shall determine the width of right-of-way and surface, and the type and character of construction, improvement, and maintenance."

The fourteenth paragraph says nothing contained in the section "shall be construed to retard or delay in anywise the completion of the state highway system as designated and laid out under existing law, the construction of which shall proceed concurrently with, or take precedence over, the construction of all other highways provided for herein, as may be determined from time to time by the State Highway Commission."

As the foregoing summary shows, the road construction authorized by the constitutional amendment falls into five classes:

(1) The completion and widening or other improvement of the state system of primary and secondary highways as designated and laid out under existing law.

(2) The construction of other (new) state highways and bridges and the widening or other improvement of existing state highways and bridges in the congested traffic areas adjacent to the cities of St. Louis and Kansas City.

(3) The location, establishment, acquisition and construction of "supplementary" state highways and bridges in each county of the State, exclusive of St. Louis and Kansas City, in addition to those state highways and bridges designated and laid out under existing law, these being what are generally called "farm-to-market" roads.

(4) The location and construction of not exceeding three hundred miles of highways and bridges to be added to the state highway system, "in order to connect state highways as designated and laid out under existing law with other such highways or with highways in adjoining states, and also in order to facilitate and expedite the movement of through traffic."

(5) The location and construction of highways and bridges in

state parks, with connections therefrom to the primary or secondary highways of the State.

. It is apparent at once the road improvement sought by the relators does not come within the "traffic relief" clause which we have placed in class 2 above, for that work is to be done only in Traffic Relief: the congested areas *adjacent* to the cities of St. Louis Supplementary and Kansas City, whereas the part of U. S. Highway Highway. No. 40 here involved lies wholly *inside* of the corporate limits of the latter city. Neither can it be put in class 3 and called a "supplementary," or farm-to-market road, because the section expressly excludes St. Louis and Kansas City in the apportionment of these roads. Nor, obviously, is it a state park road. All this is conceded by relators. They contend the part of Highway No. 40 which figures in this case, is, and was at the time of the adoption of the constitutional amendment, included in the "state system of primary and secondary highways" falling in class 1, which, by the express provisions of the section may be completed, *widened* or otherwise improved out of the bond issue. Their further and perhaps main contention is that if the highway inside of Kansas City is not a part of the state highway system, nevertheless it may be widened as a part of the construction of the additional 300 miles of highway in class 4, to connect with other state or foreign highways or to facilitate and expedite the movement of through traffic.

I. At the outset one brief filed by *amici curiae* suggests our alternative writ should be quashed because the law requires as a prerequisite to the granting of relief by mandamus that the applicant, or relator, show a clear legal right to the thing demanded and an imperative duty on the part of the respondent to render performance thereof. [State ex rel. Gehner v. Thompson, 316 Mo. 1169, 1186, 293 S. W. 391, 398; State ex rel. Kern v. Stone, 269 Mo. 334, 342, 190 S. W. 601, 602.] It is argued the law imposes no duty on the State Highway Commission to hold hearings on and to assume jurisdiction of petitions for road building, as the relators seek to compel the respondent to do in this case. There is no need of going into that question very fully. The law does vest in the Commission "all powers necessary or proper to enable (it) . . . to carry out fully and effectively all of the purposes" of the statutes under which it works (Sec. 8094, R. S. 1929); and it has a principal office in Jefferson City which is required to be kept open at all times except Sundays and holidays for "transaction of business." [Sec. 8102, R. S. 1929.] The Commission is required to meet at least once each month (Sec. 8103, R. S. 1929), and to "aid at all times in promoting highway improvement throughout the state" (Sec. 8104, R. S. 1929). Furthermore, Section 29, Article II, of the

Constitution provides "that the people have the right . . . to apply to those invested with the powers of government for redress of grievances by petition or remonstrance." [See 12 C. J. sec. 482, p. 955.] The Highway Commission, itself, does not raise this point suggested by the *amici curiae*. We think the case should not ride off on a point so technical.

II. Is Highway No. 40, within the corporate limits of Kansas City, a part of the state highway system which the constitutional amendment of 1928 authorizes the State Highway Commission to widen out of the proceeds of the $75,000,000 bond issue? We think not for a very good reason suggested in respondent's return and the briefs in support thereof. The language of the amendment is "to complete and widen or otherwise improve the state system of primary and secondary highways *as designated and laid out under existing law.*" (Italics ours.) What was the existing law when the amendment was adopted? It was the Centennial Road Law enacted in 1921 (Laws 1921, 1st Ex. Sess., p. 131) which *repealed* all the sections in Article II, Chapter 98, Revised Statutes 1919, whereunder the controverted part of Highway No. 40 was designated and built. And what was the state highway system designated and laid out under that "existing" law? The question is answered by Section 29 of the act, now Section 8120, which provides the "state-wide connected system of hard surfaced roads" created and established therein and thereby "shall be known as the 'state highway system' and shall consist of highways along the following described routes."

Following the foregoing is a statutory designation of the highway routes in each county by control points, with a provision at the end authorizing the Commission to designate the routes and types of approximately 1500 miles of "higher type" or primary roads connecting the principal population centers of the State, and permitting it to make such changes in the routes of said roads as it may deem necessary in the interest of economy and directness of routes, provided, that no such changes shall increase the total mileage of the state highway system.

That the state highway system was designated and laid out by this section has been held or recognized by this court several times: In Castilo v. State Highway Commission, 312 Mo. 244, 279 S. W. 673, decided in 1925, and in State ex rel. County of St. Louis v. State Highway Commission, 315 Mo. 707, 712, 286 S. W. 1, 2, and State ex rel. Liberty Township v. State Highway Commission, 315 Mo. 747, 756, 287 S. W. 39, 43, both decided in 1926; all before the constitutional amendment was adopted. See also State ex rel. State Highway Commission v. Gordon (in Banc), 327 Mo. 160, 36 S. W.

(2d) 105, 106; and State ex rel. County of Reynolds v. State Highway Commission, 328 Mo. 859.

U. S. Highway No. 40 in Jackson County follows one of the routes designated by the statute for that county, but the part here in controversy—within the corporate limits of Kansas City is not included in that designation. Indeed, it is excluded, for the words of the statute with reference to that particular road are: *"beginning at the east city limits of Kansas City, Missouri, near Leeds, Missouri, and thence via the road known as the Sni-a-bar road to Grain Valley, Missouri, and thence in a southeasterly direction via Oak Grove to the Lafayette-Jackson County line."* (Italics ours.) In other words the road *starts* at the east city limits of Kansas City and runs easterly; no part of it is within the city. Neither is there any claim or admission that the controverted part of the highway has been designated as a part of the primary road system (if it could have been). On the contrary the respondent's return affirmatively and expressly alleges it has never "been designated by the Legislature of Missouri or the State Highway Commission of Missouri as a part of the state highway system of Missouri." All of which leads to the conclusion, first stated, that Highway No. 40 within the corporate limits of Kansas City is not a part of the state system of primary and secondary highways for the widening and other improvements of which the proceeds of the $75,000,000 bond issue may be expended.

The relators' contention on this question runs along this line: They first point to the title of the Centennial Road Law which recites in part that it is "an act . . . providing for the construction and maintenance of a state-wide connected system of hard-surfaced public highways extending into each county of the State, to be known as *state highways."* (Italics ours.) Next attention is called to Section 3 of the act, now Section 8093, Revised Statutes 1929, which defines a "state highway" as "a highway constructed or maintained at the cost of the state, or *constructed with the aid of* state funds or the *United States government funds,* or any highway included by authority of law in the state highway system." (Italics ours.) We are referred also to Section 14 (1) of the act, now Section 8104 (1), which provides the Highway Commission shall "have supervision of . . . highways constructed in whole or in part by the aid of moneys appropriated by the United States government . . . ;" to other sections assenting to the act of Congress of July 11, 1916, providing for Federal aid in the construction of rural post roads, and generally requiring the Commission to comply with Federal requirements respecting such roads (which include maintenance); and to various sections wherein the words state highways and state highway system seem to be used more or less synonymously. From all this it is argued any Federal-aid road, being a state highway, is a part of the state highway system.

958

All the Federal-aid roads in the State possibly may be considered a part of a state highway system in a qualified sense, since the Highway Commission is vested with supervision over them and is directed or authorized, to maintain them. Section 37 of the Centennial Law, now Section 8134, tends to support this view. It requires the Commission to maintain "the *state highways* as herein designated" in a manner "*consistent with the present condition of such roads,*" after which comes a proviso "that when the roads *included in said state highway system* have been constructed by the commission, or acquired as provided for herein, they shall be maintained by the commission and kept *in a good state of repair at whatever cost may be required.*" (Italics ours.) This indicates there are different classes or groups of roads in the system. The roads in the state highway system designated by Section 8120 necessarily must be either constructed by the Commission or acquired as provided in the act, and would therefore fall in the second group; and perhaps it may be said that by adding Federal-aid roads not taken over as a part of the designated state highway system a larger system is contemplated.

So, too, Section 33 of the Centennial Road Law, now Section 8127, allows the Commission to reimburse counties for roads built by them which are thereafter taken into the state highway system, by constructing so-called "refund" roads in such counties which the statute says shall be "additional" roads "connecting" with the state highway system. These are obviously not a part of the system designated by Section 8120, and yet this court in speaking of them in State ex rel. County of St. Louis v. State Highway Commission, supra (315 Mo. l. c. 712, 286 S. W. l. c. 2) said: "To say that such roads form no part of the state highway system yet are auxiliary to it, seems to involve a contradiction." We shall not undertake to decide whether there is a state highway system larger and more inclusive than the system designated by Section 8120. What we do say is, that whether that be true or not, the system "designated and laid out under existing law" referred to in the constitutional amendment of 1928, is the system created and established by Section 8120. Every road included therein is a state highway, but it does not follow that every state highway is a part of that system.

It is suggested in the brief of one *amicus curiae* that under Section 36 of the Centennial Road Law, now Section 8133, state highways may be built through municipalities having more than 2500 population where and insofar as the houses abutting such roadway are not less than 200 feet apart on the average. That is true, but at most it only shows the highway route here involved perhaps *could* have been extended into Kansas City. However, Section 8120 plainly and explicitly shows it was not done. The true state highway system was carefully designated by the General Assembly in that section of

the statutes with a view to aggregate mileage and a proper apportionment between the several counties of the State. The fourteenth paragraph of the constitutional amendment of 1928 evidences legislative concern for its early completion as a whole. In our opinion the amendment should not be construed to enlarge the system except where such intention is plainly manifested. ·

III. The next question is whether the improvement sought can be made as a part of the 300 miles of road added to the state highway system by the constitutional amendment, which we have put in class 4. A large part of respondent's return and the briefs in support thereof is devoted to the proposition that none of the bond money can be spent for any sort of road construction or improvement within the corporate limits of St. Louis and Kansas City because the people were told when the amendment was submitted and voted upon, that this would not be done. It is argued we can take notice of these facts as a matter of contemporary history and treat them as an extraneous aid to construction.

Condensed, the allegations in the return are that when the submission of a constitutional amendment was in contemplation, certain groups and organizations favored a bond issue of $120,000,000 instead of $75,000,000, to finance the work called for by the present amendment, ultimately adopted, and also to include the construction of highways in St. Louis and Kansas City; that other groups and organizations were opposed to a bond issue of more than $60,000,000, and still others to any bond issue at all. To compose these ·differences the Governor appointed a board or commission which rejected the proposals "containing a specific authorization to construct highways within the corporate limits of St. Louis and Kansas City" and eliminated the same from the amendment submitted, with the consent of the proponents thereof. It is further alleged that these proponents of the St. Louis-Kansas City building program "did themselves at that time, in an effort to secure the passage of Proposition No. 3, represent to the voters that it was neither the purpose nor the intention of this amendment to authorize the construction of state highways within St. Louis and Kansas City; and that largely upon such representation and with that clear understanding in the minds of the voters this amendment was adopted as a part of our Constitution." ·A little later the return concludes with the statement that "it was the express intent of those who framed the constitutional amendment of 1928 and the clear understanding of the people of Missouri in voting on said amendment, that no funds thereby created should be used for the purpose of constructing or widening streets or highways within the corporate limits of Kansas City or St. Louis." Respondent contends that since relators have filed a motion for judgment on the pleadings these facts must be taken as true.

There is plenty of authority on the proposition that contemporary history, the general spirit of the times and the objects and purposes aimed at by legislation may be looked to in construing it, if ambiguous. In re Oppenstein, 289 Mo. 421, 429, 437, 233 S. W. 440, 442, 444, was a case where this court consulted the journal of the constitutional convention of 1875 in construing a section of that instrument. But in our opinion, the facts pleaded in the return here are not so persuasive as respondent believes them to be.

In the first place, in elaborating this point in its brief respondent sets out the alternative propositions which the Governor's committee had before it. From these it appears the plan suggested by the proponents of the St. Louis-Kansas City building program called for a bond issue of $120,000,000, one-half the proceeds from which were to be used in completing the state highway system as designated by the 1921 law, and the other half in building, acquiring or improving additonal highways in the various counties of the State and in St. Louis and Kansas City (forming continuations of the designated system), these latter funds to be apportioned to said counties and to St. Louis and Kansas City in the ratio which the number of motor vehicles registered in each bore to the total registration in the State. We are of the opinion that the rejection of this ambitious improvement scheme calling for proportionately large expenditures in St. Louis and Kansas City has little if any tendency to prove an intention to deny the two cities any participation whatever in the relatively small 300 miles addition to the highway system for the whole State, finally decided upon, especially considering the expressed purpose of the latter.

Again, treating the allegations as true, their legal effect as evidence is a question of law for the court. [Nodaway County v. Williams (Mo. Div. 2), 199 S. W. 224, 227.] The gist of the charge is that the advocates of the amendment by their public utterances induced the people to believe none of the bond money would be spent in St. Louis and Kansas City, and caused them to vote for the adoption thereof with that understanding. Now keeping in mind that the question before us in this proceeding is not one of estoppel or fraud, but simply a matter of *construction*, what do the authorities say about proof of that character?

The law is thus stated in 6 Ruling Case Law, page 68, section 65: "It is generally recognized, however, that debates of a constitutional convention are of only limited value as explaining doubtful phrases, and that they may be an unsafe guide, since the Constitution derives its force as fundamental law, not from the action of the convention, but from the people who have ratified and adopted it." [See also 12 C. J. sec. 64, p. 712, and State ex rel. Heimberger v. Board of Curators of the University of Missouri, 268 Mo. 598, 616, 188 S. W.

128, 132.] If this be true of public discussions by the people's chosen delegates in convention assembled, how much more should it be true of representations made here and there at large over the State by private individuals and organizations in advocacy of a cause at an election. In an Arkansas case, Hodges v. Dawdy, 104 Ark. 583, 149 S. W. 656, evidence of this sort was disregarded altogether. [See also Applegate v. Eagan, 74 Mo. 258, 265.] Without going that far in this case, and not forgetting the return alleges the people did believe and rely on the statements made to them, we hold it is neither conclusive nor persuasive evidence that the particular clause of the amendment here under consideration has the particular meaning respondent attributes to it.

The charge in the return that "it was the express intent of those who framed the constitutional amendment of 1928 and the clear understanding of the people of Missouri in voting on said amendment, that no funds thereby created should be used for the purpose of constructing or widening streets or highways within the corporate limits of Kansas City or St. Louis," standing alone, is a pure conclusion. The motion for judgment on the pleadings admits only facts *well pleaded*. This allegation must be coupled with the preceding allegations concerning the inducing representations made to the voters before it can be accepted as a statement of fact. For the reasons specified we are unable to accord it much weight.

Beyond all this is the rule that extrinsic aids to construction may be resorted to only when the instrument itself is ambiguous (State ex rel. Heimberger v. Board of Curators, supra); and we think the meaning of the constitutional amendment is fairly clear. The *amici curiae* arrayed on respondent's side of the case argue it discloses a consistent and fixed intention to exclude St. Louis and Kansas City from any share in the road construction program financed by the bond issue, because: (1) the state highway system referred to in the amendment, where it touches both cities, starts or stops at the corporate limits thereof; (2) the traffic relief roads provided for are expressly limited to the congested areas *adjacent* to these cities; (3) and the two cities do not share in the apportionment of supplementary or farm-to-market roads.

On the first proposition it is true Section 8120 describes all the highways in St. Louis County as "beginning at the city limits of St. Louis." The same is true of the road here involved, which begins "at the east city limits of Kansas City." One other road in Jackson County runs north "to Kansas City" and two others begin "at Kansas City." What the last mentioned expressions mean we need not decide, for whatever they mean all the foregoing facts have no bearing on the interpretation to be given the clause later adopted providing for a 300-mile *addition* to the highway system.

But the two other clauses are significant and point to a conclusion not in harmony with respondent's view, we think. In providing for "traffic relief" roads in congested areas the amendment definitely locates these areas as being "adjacent" to St. Louis and Kansas City. In dealing with the supplementary state highways the two cities are expressly excluded. Indeed, in referring to the state highway system it is carefully described as the system "designated and laid out under existing law."

On the other hand, when it comes to the 300-mile addition to the system there is no such limitation. The sole condition imposed is that these roads shall be built in order to connect highways in the state system with other such highways or with highways in adjoining states, and also in order to facilitate and expedite the movement of through traffic. As to the latter objective it must have been in contemplation that one of the greatest obstructions to the movement of through traffic is congestion; and that this condition would be encountered in and entering these two cities. Indeed, the amendment takes notice of it by providing for traffic relief roads in the "congested" areas adjacent thereto. And yet, as we say, there is no word of restriction in this paragraph against building such roads inside the corporate limits of Kansas City and St. Louis, notwithstanding the framers of the section were meticulous in that regard in the other clauses. The language of the "300-mile" paragraph being without exception and for a paramount and definitely stated purpose which we know may be served by road construction within these municipal areas, it would do violence to the amendment to read into it a proviso excluding them, or to say the omission of such limitation was through oversight.

Respondent insists that if it had been the intention to facilitate the movement of through traffic inside the two cities by relieving against congestion, that concept would have been covered in the "traffic relief" clauses instead of limiting the latter to areas "adjacent" to the cities. That might have been done, but the traffic relief provisions allow both new construction and the improvement of existing roads, and they contain no express limitation as to mileage, whereas the paragraph under consideration authorizes only new construction and holds it to a maximum of 300 miles for the whole State. These limitations may have been in mind. It may be suggested further that if it was the intention to speed up through traffic by relieving congestion, why did the 300-mile clause provide only for building *new* roads instead of allowing also the widening and improving of existing roads, as was done in the "traffic relief" clauses?" We do not know; it may have been intended to construct a few separate roads for through traffic.

We cannot tell all that was in the minds of those who drew the amendment or of the voters who voted for it, We do not say any

of the things we have suggested, were. But we are controlled by what the amendment says, so far as its recitals are consistent and intelligible, and it is our duty to give effect to every part if possible. [Castilo v. State Highway Commission, supra, 312 Mo. 1. c. 264, 279 S. W. 1. c. 676.] The insertion in the "traffic relief" and "supplementary road" clauses of provisions excluding St. Louis and Kansas City and the omission of any such exception in the ·300-mile clause are prima facie evidence of a change in intent, i. e., that as to the latter these cities were not excluded. [Endlich, Interpretation of Statutes, Secs. 382, 383, pp. 534, 535; Novicki v. O'Mara, 280 Pa. St. 411, 416, 124 Atl. 672.] This conclusion is reinforced by a consideration of the purpose expressed in the clause —to speed through traffic.

Respondent argues further that the relators' case does not come within the 300-mile clause for this reason. The paragraph says "in order to connect state highways . . . with other such highways or with highways in adjoining states, *and also in order to* facilitate and expedite the movement of through traffic" (italics ours) the Commission may build the roads, etc. Respondent argues this language with its context signifies an inseparable joint purpose and not two several purposes; and that the provision should be read as if it said "to expedite through traffic *by* connecting state highways with other state or foreign highways." On this construction, respondent contends the paragraph does not apply because the proposed improvement of Highway No. 40 stops at 31st street and does not connect with any other state or foreign highway. We find it unnecessary to decide the question further than to say we think the paragraph states two separate purposes, (1) to connect highways, and (2) to facilitate the movement of through traffic.

Respondent raises another point: that the amendment ought not to be construed to authorize road construction in any municipality because this would violate the spirit and intent of Section 46, Article IV, of the Constitution, which forbids the making of any legislative grant of money or other valuable thing to a municipal corporation. On this ground it was held in State ex rel. Town of Kirkwood v. County Court, 142 Mo. 575, 584, 44 S. W. 734, 736, that funds raised by county taxes could not be used for the improvement. of streets within a city, town or village.

If this law is applicable to the state highway system, what becomes of Section 8133, which has provided ever since its enactment in 1921 that any state highway routed through a municipality of less than 2500 population may be constructed by the commission, and in municipalities of greater population may likewise be built where the abutting houses are not less than 200 feet apart on the average? Paragraph after paragraph of Section 8120 provides that

964

state highways shall go "through" specified municipalities. All·this was a part of the "existing law" under which the state highway system was "designated and laid out;" and the amendment provides the system may be completed, widened or otherwise improved out of the $75,000,000-bond issue. The fact that a road of the state highway system goes through a municipality does not make it the property of the municipality. These highways form a state wide connected system, and their passing through various municipalities is subservient to that purpose. In our opinion their construction or improvement is not a gift or grant to such municipalities. If this is not true the amendment, Section 44a of Article IV of the Constitution, must be deemed to have created an exception to Section 46 of the same article. We rule this point against respondent.

Another sweeping contention made by respondent is based on the fact that its return alleges the improvement of Highway No. 40 within the corporate limits of Kansas City will not, as a matter of fact, connect state highways or state and foreign highways, and will not facilitate or expedite the movement of through traffic in any manner whatsoever. It is argued that since the relators have filed a motion for judgment on the pleadings they have confessed these facts to be true, and therefore admitted themselves out of court so far as the 300-mile clause of the amendment is concerned.

Our first impression was that this point was well taken. If respondent's sole defense is that the road improvement described and sought in relators' petitions filed before the Highway Commission and this court cannot be constructed under the constitutional amendment, in consequence of which the Highway Commission had no jurisdiction, so to speak—that defense, we say, could have been raised by interposing a demurrer to the petition filed in this court, or, if the writ had been issued, by filing a motion to quash. Either course would have had the effect of admitting all facts well pleaded in the petition. [State ex rel. Railroad Co. v. Cook, 171 Mo. 348, 354, 71 S. W. 829, 830; State ex rel. Herman v. County Court, 311 Mo. 167, 173, 277 S. W. 934, 935.] But the relators' petition contains averments probably sufficient to charge the proposed improvement of Highway No. 40 will connect it with other state and foreign highways, and undoubtedly sufficient to charge the movement of through traffic will be thereby expedited. So the respondent was unwilling to risk its case on a demurrer and accordingly filed a return in which the constitutional objection is prominently raised as the main defense, but also denying the foregoing averments in the relators' petition by specific allegations to the contrary—that is, by saying the widening of Highway No. 40 will *not* connect with other highways and will *not* expedite the movement of·through traffic.

On a first reading it seemed that by following this course the re-

spondent had manifested an intention to raise issues of fact, and that when the relators filed a motion for judgment on the pleadings they confessed these facts and thereby unhorsed themselves insofar as such facts are determinative of the application of the amendment. But on further reflection we have concluded this result does not follow. The ultimate issue in the case is whether the respondent Highway Commission *shall accept jurisdiction of the relators' petition* filed before it and consider the same. The respondent says it is not bound to do so because the proposed road improvement cannot be made under the constitutional amendment. This clearly presents a question of law arising on the petition and the Constitution. The respondent perhaps might in some circumstances raise an issue of fact, that the allegations in the relators' petition are not true, and that under the actual facts as respondent asserts them to be, the constitutional amendment forbids the doing of the work. But it cannot raise that question as an excuse for refusing to receive the relators' petition filed before it. Who ever heard of a court's refusing to accept jurisdiction of a cause because on facts outside the plaintiff's petition he has no case on the merits? In determining that, the court would be exercising jurisdiction, and it cannot at the same time accept jurisdiction and yet say it has none. Our conclusion is that these allegations in respondent's return do not tender a well pleaded issue which the relators' motion for judgment on the pleadings confesses in this proceeding.

IV. But while, as is held in the foregoing part of this opinion, there is nothing in the ''300 mile'' provision of the constitutional amendment forbidding the building of highways into the corporate  limits of St. Louis and Kansas City for the special purposes mentioned in that clause, yet we think the relators' petition does not bring them within it because the road improvement they seek is the *widening* of Highway No. 40 whereas this constitutional provision only authorizes the construction of new roads. The language is that in order to connect highways and to expedite the movement of through traffic the Commission is authorized ''to locate, construct, and maintain . . . highways and bridges not exceeding in the aggregate three hundred (300) miles as a part of and to be added to the said state highway system.''

In dealing with the existing system of state highways the amendment provides the Commission shall expend the State Road Fund ''to complete and widen or otherwise improve'' them. With reference to the ''traffic relief'' roads the language is ''to construct other state highways and bridges, and to widen or otherwise improve existing state highways and bridges.'' As regards the farm-to-market roads authority is given ''to locate, establish, acquire and

construct'' them, ''in addition to'' the present system. So, also, with the 300 miles of roads, the Commission may ''locate (and) construct'' them as an *addition* to the designated system. In our opinion this clearly contemplates only the building of new roads adding mileage to the state system, and not the widening of existing roads. As will be seen, wherever the amendment meant to authorize the widening of roads this was stated explicitly; when the design was to add new roads that fact was shown with equal clearness; and when either might be done the amendment so declared.

It is suggested by relators that if Highway No. 40 inside of Kansas City is not a part of the state highway system, as respondent contends and as we have held, the widening thereof would make an *addition* to the mileage of the system. But we cannot think this is a fair construction of the provision. It would be incongruous to say additions to the width of a Federal-aid road not included in the highway system, which become parts of that road, would constitute new roads within the meaning of the Constitution. If a new separate road were built, though closely following or even touching the present one, or if the Commission can and should take over the present road and incorporate it in a new road, perhaps that would not be true. But the petition in the case only seeks the widening of the present Federal-aid road, as such. We are not to be understood, however, as holding, even with reference to new construction, that any of the present state highways do enter Kansas City so that they can be ''connected'' by new roads built inside the city, or that, in any event, state highways under the ''300-mile'' provision may be built in violation of the provisions of Section 8133, Revised Statutes 1929, limiting such construction in municipalities of over 2500 population to places where the abutting houses average less than 200 feet apart.

For the reasons given a peremptory writ of mandamus is denied. All concur.